Complainants bring this suit to account for the decedent's share in a partnership which they claimed existed between Hugo Munzer, the decedent, and the defendants. The complainants alleging that a partnership existed between the father and the sons at the time of the death of Hugo Munzer, December, 1920, and for many years prior thereto, the claim being that the two sons and the father each had a one-third interest in the partnership in the wholesale and retail liquor business which was located in Paterson, New Jersey. The defendants contend that no such partnership existed at the time of their father's death, or, for that matter, at any time at all. From 1905 until the father died in 1920 the defendants say he was totally unconnected with them and had no interest whatever in the partnership known as H. Munzer Sons.
In support of the complainants' contention they rely largely on the matter of the income tax returns, claiming that the defendants' returns of the years 1910 to 1919 must corroborate either defendants' contention that they were the sole owners of the business, or the complainants' contention that Hugo Munzer was a partner with them. The complainants express their willingness to accept those returns as dispositive of the case. The defendants, however, claim privilege and refuse to produce them or to aid the complainants to secure their production.
Defendant Harry Munzer, when asked whether he was willing to give the court any assistance to produce any records that would help to decide the case, and especially a power of attorney which would help to secure from the government copies of his income tax returns, replied that he would not produce them.
Jacob Munzer, the other defendant, on being asked by the court whether he was willing to give the court any records that he had that would help the court to decide the case, replied, "No, not all."
The complainants, therefore, contend that no other inference can be drawn than that this evidence, within the sole *Page 479 
control of the defendants, and withheld by them, would prove that Hugo Munzer was a member of the firm of H. Munzer Sons. State
v. Kisik, 99 N.J. Law 385; McCooe v. Dighton S. and S. St. Ry.Co. (Mass.), 53 N.E. Rep. 134.
The complainants further contend that the presumption that arises from the refusal of defendants to bring forth their income tax returns becomes conclusive in the light of the admissions made by defendant Harry S. Munzer in his own handwriting. One of these admissions occurs in the individual return of Hugo Munzer for the calendar year 1917, in which Harry Munzer wrote: "Hugo Munzer, Senior partner H. Munzer Sons, 199-201 Market Street, Paterson, New Jersey." The other admission occurs in the partnership return for the calendar year 1919, in which Harry Munzer listed the members of the partnership as "Hugo Munzer, Jacob Munzer and Harry Munzer."
There was no written contract of partnership between Hugo, the father, and the two sons; but the partnership contract may be implied. If they had reached an agreement between themselves to carry on a common business and to divide the profits, that would make them partners, unless a partnership contract is governed by the statute of frauds.
Partnership is a relation resulting from contract, and whether there is such a contract is a question of fact which may be proved by oral evidence. Having thus established the existence of a partnership, oral evidence may then be used to show what constitutes the property of such firm, and the interests of the partners therein.
The partnership rests and must necessarily rest on mutual consent, that is to say, on contract. It can exist only in pursuance of an expressed or implied agreement to which the minds of all parties have assented.
Hugo Munzer did many of the acts of an owner of a business. Thus, he sold goods of the business. This is proved by the testimony of many witnesses.
The defendants truly claim, however, that a clerk might do the same thing. The complainants have proved many other *Page 480 
things that Hugo did, which they claim go to establish that a partnership existed. One of the witnesses for the complainants, Mr. Braveman, says that he saw Hugo Munzer order goods; that Jacob or Harry Munzer were sometimes present, but that he never saw them give an order, and that no salesman consulted either Jacob or Harry Munzer about an order. Mr. Braveman says that this occurred down to the time when prohibition went into effect. He testifies that he heard arguments between the father and the sons about the buying, but that Hugo Munzer would buy anyway. He testifies that the sons complained to him, Mr. Braveman, that the father gave orders whether they needed or did not need them, and that the sons asked Mr. Braveman to talk to their father because he would not listen to them but would listen to Mr. Braveman. Mr. Braveman says he saw these orders given by Hugo Munzer from the time Jacob Munzer came into the business right down to prohibition; and that the orders were for wine, liquors, glasses, bottles, corks, labels, cups, c. Mr. Braveman says that there was an argument shortly before prohibition went into effect about ordering goods and that Jacob thought no more buying should be done because of prohibition, but that his father, Hugo, had his way about it.
Mr. Braveman also testified that Hugo Munzer sampled the goods before purchasing them for the business, and did anything about the store that anybody busily engaged there would; and that Hugo Munzer dictated letters about the business as to prices, c., which letters Harry Munzer signed.
Mr. Braveman also testified, that Hugo Munzer took money out of the cash register of the business.
It has been testified that both Hugo Munzer and Harry Munzer secured insurance to cover the stock of liquors of H. Munzer 
Sons, and both Hugo Munzer and Harry Munzer ordered the insurance in the name of Hugo Munzer.
That the license of the business was taken in the name of Hugo Munzer, and that Hugo Munzer made the application for the license to the city of Paterson by authority of the firm, Jacob Munzer so testified. *Page 481 
It has been testified that Hugo Munzer signed and filed a statement as to the financial condition of Hugo Munzer Sons on March 26th, 1919, at the Citizens' Trust Company of Paterson, New Jersey.
The firm had a Vim truck two years before prohibition took effect, which would be about 1917. Jacob Munzer said he bought the truck himself from a dealer on Paterson street. This was in 1917 or 1918, and the truck was owned by Harry and Jacob Munzer, and was the only truck they had. Harry Munzer says that he and his brother bought the Vim truck from funds of the business. Nevertheless, the records of the Passaic county register's office show a second mortgage made by Hugo Munzer to Lester A. De Voe on one new commercial auto, manufactured by The Vim Motor Car Company.
It has also been testified that Hugo Munzer filed income tax returns on behalf of the partnership. Various admissions were made by the defendants at a time when their father was living and before any controversy had arisen, according to the testimony. Mr. Spitz testified, that after he had become engaged to a granddaughter of Hugo Munzer, who was also the niece of Jacob and Harry Munzer, he had a conversation with Harry Munzer in January, 1920, in which the latter said: "You probably think it is peculiar that I did not give you anything for an engagement present, but Dad gave you a grandfather's clock and he paid for that out of the money of the business, and the business belongs to Jake, me and grandpa, so that it all came out of the same funds and that is why it is the present of all of us."
Mr. Spitz also testified, that while Hugo Munzer and the defendant Harry Munzer were in Europe in the summer of 1920, Jake Munzer said to his father-in-law (Mr. Heinrich), "I have a warehouse certificate for some liquor. I don't know what to do with it. Pop bought this before he left and he bought it very cheap, and I have an offer of $2,000 for it now, and I don't know whether to sell it or not. I think $2,000 is a lot of money. We may have some trouble getting the liquor out if we do keep it, and I don't know what to do *Page 482 
with it," and that Mr. Heinrich replied, "If you think you are getting a good price you might as well sell it;" and Jake replied, "You know that pop always hollers if we do things without him, without consulting him."
There is also testimony of an admission by Harry Munzer that his father was a member of the firm of H. Munzer Sons, and that this admission occurred twice. First, it occurs in the income tax return made by Hugo Munzer for the calendar year 1917, and marked as an exhibit, which exhibit contains an item reading: "Hugo Munzer, Sr., partner H. Munzer Sons, 199-201 Market street, Paterson, New Jersey," made in the handwriting of Harry S. Munzer. An expert on handwriting testified that this writing is in the handwriting of Harry S. Munzer, who compared it with the endorsement "H. Munzer Sons, Harry S. Munzer," which appears on another exhibit.
There is another admission, it is claimed by the testimony, by Harry S. Munzer, that Hugo Munzer is a member of the partnership. The partnership return for Hugo Munzer Sons for the calendar year 1919, "Exhibit S 4," contains a schedule "C," marked "Members' share of income," and this schedule has the following items:
 "Hugo Munzer, 199-201 Market street ....... $1,415.71
 "Jacob Munzer, Broadway ................... 1,413.72
 "Harry Munzer, 199-201 Market street ...... 1,353.72"

After a careful examination of the voluminous testimony in this case, I have reached the conclusion that a decree in favor of the complainants should be advised; and that the prayer of the complainants' bill that Hugo Munzer was a member of the partnership, and that the defendants must account for Hugo Munzer's interest in the partnership should be granted. *Page 483