[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 457 
The bill of complaint alleges that on December 29, 1944, the plaintiff and defendant entered into a partnership agreement to engage as co-owners for their mutual profit in business of the development of acreage in the Village of Ridgefield Park. The business was to be conducted in the name of the defendant, whose wife held the legal title to the *Page 458 
real estate, and profits were to be divided equally between the parties. The partnership activities continued until March, 1945, when a disagreement arose, and the arrangement between them was terminated.
The bill prays for a decree dissolving the partnership, the appointment of a receiver and an accounting. Defendant denies that there was a partnership between the parties, and alleges that plaintiff has been fully compensated for the use of his equipment and such services as he may have rendered to defendant.
The issues involved here are: (1) was a partnership created; (2) does plaintiff have an adequate remedy at law; (3) is the plaintiff's claim for one-half of the increase of the value of the land enforceable; and (4) is the contract enforceable in equity in view of the allegation that plaintiff was to use his ability and efforts in obtaining municipal contracts for the disposal of garbage?
The proofs establish that there were some preliminary negotiations between the parties with respect to their engaging as co-venturers for their mutual profit in the business of developing the land in question, as a result of which a proposed partnership agreement was prepared by defendant's attorney in the month of December, 1944. However, the agreement was not executed by the parties and never came into existence. Plaintiff testified that on December 29, 1944, he and the defendant agreed orally to engage as partners in the venture. The tract of land in question consisted of approximately 100 acres of meadow land, of which the defendant testified he was the owner and that the title was in his wife's name. The testimony indicates that the plan of operations was that plaintiff would level the land with his bulldozer and cover garbage and industrial waste with clean earth after such refuse was dumped there by scavengers holding contracts with various municipalities. The defendant in turn claims to have paid the sum of $1,300 into the venture, furnished a truck, gasoline and oil and made certain repairs to plaintiff's bulldozer. Plaintiff worked on the dump approximately 12 hours per day until the middle of March, 1945, when a disagreement arose concerning *Page 459 
the insistence by the plaintiff that a road be constructed over the tract so that incoming trucks carrying garbage and refuse might be properly accommodated. Defendant refused to accede to plaintiff's demand and as a result ordered the plaintiff to remove his equipment from the tract and cease his operations. Plaintiff insists that nothing was paid him for his services and there was never any accounting between the parties. In addition to the plaintiff's claim for an adjustment of the rights and liabilities between the parties, there is sought to be enforced a claim on his part for one-half of the increased value of the lands in question due to the fill and leveling work performed by him.
Although defendant contends that the burden is on the plaintiff to prove a legally enforceable partnership contract and that plaintiff has wholly failed to do so, the plaintiff's testimony, which is not seriously contradicted by defendant, amply establishes such relationship. In addition to the evidence offered by the plaintiff, the various acts of the parties speak eloquently of an arrangement between them whereby there was created a plan of operations with reference to the land in question under which plaintiff was to contribute his skill, ability and knowledge, together with the use of his bulldozer. On the other hand, it is clear that the defendant contributed some cash, gasoline and oil for the equipment used and also the use of the land in question, albeit title to same was in the name of defendant's wife. That the parties were to share equally in the profits is established without serious contradiction. There was clearly established by the oral agreement a partnership relation and operations conducted in pursuance thereof. Braveman v.Munzer, 104 N.J. Eq. 477 (Ch. 1929). It appears from the evidence that partnership activities were discontinued by mutual acquiescence. It has been well-established that equity has jurisdiction over issues involving the establishment of a partnership, its dissolution, and for an accounting thereof. The entire issue should be settled in one proceeding.
While defendant, in his brief, argues that plaintiff's claim for one-half of the increased value of the land is not *Page 460 
enforceable, he failed to assert such a defense in his answer. There appears to be no merit to this contention. Although title to this property is in the name of the defendant's wife, he testified that he is the owner thereof. In support of his contention, defendant urges that since there was no written agreement signed by the owners, the agreement falls within the Statute of Frauds and is not enforceable. With this contention I disagree. Plaintiff does not claim an interest in the land. His claim is limited solely to the increase in value thereof. The title to the wife's property is in no wise involved in these proceedings, which is limited to an accounting for the increased value of the land. See 27 C.J. 221, sec. 206. In Chew v.Markeim, 125 N.J. Law 595 (Sup.Ct. 1941), 16 Atl.(2d) 337, it was held: "An agreement simply for the division of profits derived from the sale of land need not be in writing to be valid."
Nor is there any merit in defendant's contention that the partnership is not enforceable in equity on the ground the plaintiff was to use his ability and efforts in getting municipal contracts for the disposal of garbage and refuse. This defense was not alleged in defendant's answer. However, Ruta also testified that many of these agreements were made with scavengers having contracts with municipalities. In addition, plaintiff contributed his bulldozer and worked long hours in filling the land of the defendant. No testimony was offered to indicate that the plaintiff exercised any injurious influence over any public officials of any municipality. It is not illegal to form a partnership to secure by competitive bidding contracts from municipalities. Ruta's services did not consist solely in securing contracts from municipalities. The cases cited by the defendant have no application.
In view of the fact that all business has ceased since the middle of March, 1945, and there appears to be no other issue involved than the determination of the increased value of the land in question and an accounting of the other partnership activities, the appointment of a receiver at this time would serve no useful purpose. *Page 461 
An order dissolving the partnership and directing an accounting will be made and a reference for that purpose in conformity withRule 3:53-1 et seq.