880 A.2d 1194 (2005)
380 N.J. Super. 119
Lori MITCHELL, Plaintiff-Respondent,
v.
Richard OKSIENIK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 2004.
Decided September 2, 2005.
*1196 Janet L. Porro, Pompton Plains, argued the cause for appellant.
William N. Dimin, Englewood, argued the cause for respondent (Spector & Dimin, attorneys; Mr. Dimin, on the brief).
Before Judges KESTIN, LEFELT and FUENTES.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
Defendant, Richard Oksienik, appeals from an order entered by the trial court on October 28, 2003, in a proceeding initiated under the Prevention of Domestic Violence Act of 1991 (the Act), N.J.S.A. 2C:25-17 to -35. The matter began with the filing of the complaint on July 28, 1997, in which plaintiff, Lori Mitchell, sought an order under the Act.[1]
The amended final restraining order of October 17, 1997 provided, inter alia, that plaintiff was granted exclusive possession of the parties' home until December 1, 1997, and that she was to vacate on December 1, after which defendant was to have possession of the home. The issues before us in this appeal stem from the trial court's eventual order, on October 28, 2003, that the property be sold and the net proceeds divided equally between the parties. Defendant challenges both the court's authority to make that order under the aegis of the Act, i.e., to determine whether and how the parties' property should be divided; and the distributive result the court reached in determining the quantum of each party's entitlement.
The parties were unmarried. They had resided together since December 1986, and two children were born of the relationship, in 1990 and 1995. Both parties testified at the plenary hearing leading to the entry of the October 28, 2003 order that they had maintained joint bank accounts and had made all family and personal decisions mutually, as though they were married.
The parties had, together, located a tract of land to purchase. The transaction was completed on July 11, 1996, for a price of $39,000. The money for the purchase came from the parties' joint savings account. Title to the land was taken in defendant's name alone. Shortly thereafter, the parties constructed a modular home on the property at a cost of $120,000. They moved into the home on December 10, 1996. On the same date, defendant executed a $117,000 mortgage. According to both parties, plaintiff's parents loaned them $9,000 toward the down payment and, eventually, some $40,000.[2]
In mid-1997, the parties encountered serious problems in their relationship. This domestic violence proceeding and the parties' separation ensued.
A number of orders were entered in the more than six-year period between the commencement of the matter and its conclusion at the trial level. Most of the provisions in those orders dealt with the subject of child support and related issues. Questions over disposition of the home arose as early as October 1997, however. In an affidavit dated October 14, 1997, defendant asserted a mortgage arrearage and an inability to carry the home in the then-prevailing circumstances. He stated: "[I]t will be necessary for me to either sell *1197 the home or, alternatively, rent out the same at an amount sufficient to carry the mortgage costs." He alleged, further, that since the time of the purchase he, alone, had carried the costs associated with the mortgage, maintenance and repair.
Eventually, the issues of disposition of the home and division of the proceeds became the focus of the trial court's inquiry. Those issues were tried in a plenary hearing on October 28, 2003. Judge Farber heard the testimony of both parties and two other witnesses. He stated his findings and conclusions in an oral opinion at the close of the plenary hearing and entered a detailed order on the same day. He found "that the parties had a partnership" that was "a relationship tantamount to marriage."
[T]hese two people went forward as any married couple goes forward. They had two children.
They decided to buy a house together. They purchased a house together, similar to married couples. Very often because one of the people in a marriage has credit problems, . . . there are a variety of reasons that one of the two will not show up on mortgage documents, because you can get better interest rates. You might run into problems with underwriters if you don't do it that way. There are all sorts of things that can happen.
In this case there was a suggestion by somebody that it might be better for the Defendant to be the one named on the documents and they proceeded in that fashion.
Judge Farber went on to find that plaintiff's parents had made the $40,000 loan out of consideration for their daughter, "without the formalities of a note and a mortgage." He concluded that plaintiff is
entitled equitably to an equal share of the value of this house, less the princip[al] reduction since the time that she left the house in late '97. So, whatever he had paid down the mortgage since that time, he's certainly entitled to that benefit.
... [T]he house should be sold. * * * [O]nce it's sold, the first mortgage should be paid, the Plaintiff's mother should be paid, the Defendant should... then get his princip[al] reduction, and the parties should share 50 percent after that.
If the Defendant had been able to show proofs as to really what the difference in value of the house was before he started doing the improvements and after he did the improvements, he might have been entitled to some extra share with regard to the value caused by those improvements. The Court can't possibly say though that it's going to take invoices, receipts for things that he paid for dumping into the house and say that the house increases by the value of those costs, because that's simply not the way it works and that's not an appropriate proof as to the enhancement in value.
So, in effect, the Court has no proof as to the enhancement in value for improvements that may have been made by the Defendant. Without those proofs, the Court is left with nothing but being able to say that, other than what I've already indicated, the parties should split 50, 50. In other words, after paying off the existing mortgages and giving him the benefit of the reduction.
The only thing I will temper from what the Plaintiff's position is with regard to this case is with respect to how we proceed from here.
The Defendant has been ordered to sell the house and, at least as I'm able to determine, has not really implemented that in good faith to this point.

*1198 But it may be that he chooses to live in the house. And the Court doesn't necessarily have a problem with that, if he's willing, based upon a $349,000 purchase price, which is where he listed it, if he's willing to buy her interest, as I've described, with that being the fair market value of the house todayin other words, if it's 349, minus the first mortgage, the second mortgage, his mortgageprincip[al] reduction, then dividing the balance by 50 percent and say that he's going to buy her out for that 50 percent value, by proving that he can get the financing for that within 30 days, then I will allow him to do that.
If he's unable to do that within 30 days, then the property must be listed and it must be listed on a multiple listing. And if, in fact, it doesn't hit at 349,000, within three weeks after it's listed on a multiple listing, then . . . you are to start reducing the sale price by $10,000 for every three week period until the thing sells.
The detailed order effecting this ruling was entered on the same day, October 28, 2003. The order also denied plaintiff's application for counsel fees related to the plenary hearing; but a counsel fee was allowed to plaintiff in connection with one prior motion, subject to the submission of a certification. The scope of the appeal does not include those rulings regarding counsel fees.
Defendant filed his notice of appeal on November 21, 2003. Subsequently, on December 30, 2003, he moved before the trial court for a stay of the order requiring the sale of the home. On January 27, 2004, plaintiff filed a cross-motion to remove defendant from the property. On February 6, 2004, the trial court ordered, inter alia, that defendant immediately vacate the property. A handwritten notation on the order stated: "Def[endant] has clearly flouted orders of the court."[3]
On March 17, 2004, defendant filed an emergent application for a stay of the February 6 order. On March 30, 2004, we stayed the order directing sale of the property pending disposition of the appeal. In our order, we questioned whether the trial court was authorized to decide the property entitlement issue in the context of a domestic violence proceeding. We noted, however:
We do not have the relevant transcripts before us on this emergent application for a stay pending appeal, so we are unable to determine whether the distribution of property was fair and equitable if it had been properly addressed under the appropriate docket type. We leave that determination for the full appellate panel to consider on the full record.
On appeal, defendant argues that "the trial court erred in utilizing the statutory equitable distribution rationale in distributing property of a non-married couple...., and exceeded its jurisdiction in ordering the sale of the property and awarding [plaintiff] a one-half interest therein under the [Act,] which is the basis for the jurisdiction [that] exists in this action."
Among the remedies available on divorce is equitable distribution of both *1199 real and personal property "legally and beneficially acquired by [the parties] or either of them during the marriage." N.J.S.A. 2A:34-23h. "[O]rdinarily, equitable distribution of marital assets arises only with the adjudication of divorce." Carr v. Carr, 120 N.J. 336, 343, 576 A.2d 872 (1990). Although distribution of individually owned assets is improper under the rubric of "equitable distribution" where unmarried cohabitating parties are involved, such persons who have engaged in a joint venture to purchase property in which they reside, are entitled to seek a partition, see Olson v. Stevens, 322 N.J.Super. 119, 730 A.2d 432 (App.Div.1999), and the Family Part is the appropriate forum for the resolution of such issues. See In re Estate of Roccamonte, 174 N.J. 381, 398-99, 808 A.2d 838 (2002); Olson, supra, 322 N.J.Super. at 123, 730 A.2d 432; Dey v. Varone, 333 N.J.Super. 616, 756 A.2d 652 (Ch.Div.2000).
Judge Farber's findings concerning the parties' relationship and their conduct are well-supported by substantial credible evidence and are binding on appeal. See Cesare v. Cesare, 154 N.J. 394, 411-13, 713 A.2d 390 (1998). His conclusions logically flowing from those findings, including that the parties had jointly purchased the property, are likewise controlling. See Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988)(quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974)).
As joint venturers, the parties are entitled to seek a partition of their property when their joint enterprise comes to an end, see, e.g., Swartz v. Becker, 246 N.J.Super. 406, 410-11, 587 A.2d 1295 (App.Div.1991); Molineaux v. Raynolds, 54 N.J. Eq. 559, 35 A. 536 (Ch. 1896), irrespective of how title is formally held, see Crowe v. De Gioia, 203 N.J.Super. 22, 34, 495 A.2d 889 (App.Div.1985)("The name in which the house was held is essentially irrelevant to an equitable action such as this."), aff'd o.b., 102 N.J. 50, 505 A.2d 591 (1986). Among the remedies available on partitionwhere other modes of relief are not practicalis a forced sale of the property and division of the net proceeds between the parties. See Swartz, 246 N.J.Super. at 412-13, 587 A.2d 1295; see also, e.g., Lipin v. Ziff, 53 N.J.Super. 443, 445, 147 A.2d 601 (Ch.Div.1959).
To deny co-habiting but unmarried persons the legal and equitable remedies generally available would be unfair and un wise.
The decision to cohabit without marriage represents each partner's voluntary choice as to how his or her life should be ordereda choice with which the State cannot interfere.... As in the case of any other individuals, these partners remain free to enter into valid and enforceable agreements concerning their earnings and property rights. * * *
As the majority emphasizes, these agreements may be express or implied. * * * At bottom, courts must determine the intent or understanding of the parties as to whether, and to what extent, their assets and income are to be divided. This intent may be discerned from their explicit language, as in the present case, or from their conduct and actions interpreted in light of all the surrounding circumstances. Regardless of the precise manner in which the parties manifest agreement, however, it is their reasonable expectations that must be honored. And the Court may look to a variety of remedies to protect that expectation. * * * *
The question which remains is whether quasi-contractual and equitable remedies should also be available to the parties upon dissolution of their relationship. Most unwed persons who *1200 choose to cohabit likely do so "in ignorance of the [financial] consequences of either marriage or non-marriage" and "with absolutely no thought given to the legal consequences of their relationship." Bruch, [] Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Services, [] 10 Family L.Q. 101, 135 (1976). Consequently, an agreement such as is here present may not exist in the vast majority of cases.
Given this circumstance, it would be unwise to require some form of contract as a prerequisite to relief in the courts. Rather, we should presume "that the parties intend[ed] to deal fairly with each other" upon dissolution of the relationship... and consequently, in the absence of agreement, "employ the doctrine of quantum, meruit, or equitable remedies such as constructive or resulting trusts" in order to insure that one party has not been unjustly enriched, and the other unjustly impoverished, on account of their dealings....
Since such remedies are grounded in equity, their applicability would depend upon the facts and circumstances of each particular case. The factors to be weighed by a trial judge would include, as examples only, the duration of the relationship, the amount and types of services rendered by each of the parties, the opportunities foregone by either in entering the living arrangement, and the ability of each to earn a living after the relationship has been dissolved. These remedies may be cumulative or exclusive. Decisions concerning the complexities that might arise upon application of these principles must be determined on a case by case basis.
[Kozlowski v. Kozlowski, 80 N.J. 378, 389-91, 403 A.2d 902 (1979) (Pashman, J., concurring) (case citations omitted).]
See also Crowe v. De Gioia, supra, 203 N.J.Super. at 34, 495 A.2d 889.
Our review of the trial court's oral opinion discloses that the court did not apply equitable distribution principles to the case at bar. Rather, the court made factual findings and, within its general equity powers, determined, based upon the facts establishing a joint enterprise, that the parties had equal interests in the real property.
An order entered on June 27, 2003 scheduled the hearing that was eventually held "to determine the equitable interest of [plaintiff], if any, in the premises owned by defendant[.]" (Emphasis added.) At the plenary hearing, in the light of his factual findings that a joint enterprise existed, Judge Farber concluded that plaintiff was "entitled equitably to an equal share of the value of this house[.]" It is beyond question that the trial court determined the real property to be an asset of the joint enterprise it had found to exist.
Based upon the evidence proffered, and explicitly in the context of showings that had not been made, the court also found that both parties had made equal contributions to the purchase and maintenance of the real property. Although the parties had not entered into a written agreement with regard to the purchase of the real property, formal written agreements are not necessary for a joint enterprise to exist. See Kozlowski v. Kozlowski, 164 N.J.Super. 162, 171, 395 A.2d 913 (Ch.Div.1978); Ruta v. Werner, 1 N.J.Super. 455, 459, 63 A.2d 825 (Ch.Div.1948). The existence of a joint enterprise can be found even in the absence of a written agreement, inferred from conduct of the parties. See Kozlowski, supra, 164 N.J.Super. at 171, 395 A.2d 913; Ruta, supra, 1 N.J.Super. at 459, 63 A.2d 825; see also Crowe, supra, 203 N.J.Super. at 34, 495 A.2d 889. Because the parties' *1201 relationship had dissolved, the Family Part of the Chancery Division, in response to a request for relief from either or both parties, justifiably applied its authority to order an equitable remedy, including a division of the assets of the joint enterprise, i.e., the net balance after satisfaction of existing debts and costs. See, e.g., Ruta, supra, 1 N.J.Super. at 459, 63 A.2d 825.
Defendant argues, without citing any supporting authority, that because all the documents connected with the purchase of the real property are in defendant's name only, it would be inequitable for the parties to share the net proceeds from the sale of the real property equally. It is clear, however, that the purchase of property under one unmarried cohabitant's name is "essentially irrelevant to an equitable action[.]" Crowe, at 34, 495 A.2d 889. In Crowe, for example, the defendant had argued that taking title to real property in his name only showed that he had no intention of conveying such property to his former cohabitant. Ibid. We found his argument unpersuasive because the record was replete with evidence to the contrary. Ibid.
As in Crowe, the evidence here belies defendant's contention that he is the sole owner of the real property. The trial court found more than sufficient facts to support its conclusions that the parties had always intended ownership of the home to be a joint enterprise, irrespective of how title was held; that defendant had failed to prove an entitlement to further credits than the court allowed; and that, absent further proofs to the contrary, the parties were entitled to share equally in the net proceeds from the sale of the property. The trial court also did not exceed its discretion in providing that defendant could buy out plaintiff's interest in the property on the conditions stated.
Where a party properly invokes the general equity powers of the court in addition to seeking relief under the Act, it is of no consequence that the scope of remedies provided in the Act does not include a specific order sought. Cf. Arabia v. Zisman, 143 N.J.Super. 168, 176, 362 A.2d 1221 (Ch.Div.1976) ("In doing equity, this court has the power to adapt equitable remedies to the particular circumstances of each particular case."). Here, in addition to the relief she sought under the Act, plaintiff, with ample notice to defendant, also invoked the broader equitable jurisdiction of the court. As a matter of judicial economy, all issues between the parties should be resolved in the matter at hand, including disputes over entitlement to property, as long as actual notice is provided as to the specific relief sought. See, e.g., Olson, supra, 322 N.J.Super. at 123, 730 A.2d 432; Ruta, supra, 1 N.J.Super. at 459, 63 A.2d 825.
Although plaintiff did not formally file a separate complaint for equitable relief regarding the real property, her motion papers in the pending matter are a suitable substitute. The Chancery Division, Family Part, is the appropriate venue for determining property disputes between unmarried cohabiting couples. Disputes between such couples fall under the references of R. 4:3-1(a)(3) and R. 5:1-2(a) as arising from family-type relationships. See Roccamonte, supra, 174 N.J. at 398-99, 808 A.2d 838; Dey, supra, 333 N.J.Super. at 619, 756 A.2d 652 (citing Olson, supra, 322 N.J.Super. at 121, 730 A.2d 432). If plaintiff had filed a separate complaint seeking a determination of the parties' respective interests in the real property, the action would have been transferred to the Chancery Division, Family Part. See Roccamonte, supra, 174 N.J. at 398-99, 808 A.2d 838; Dey, supra, 333 N.J.Super. at 619, 756 *1202 A.2d 652; Pressler, supra, comment 1 on R. 5:1-2(a). That matter would undoubtedly have been consolidated with the pending domestic violence proceeding.
The reservation contained in N.J.S.A. 2C:25-29b(2), that an order addressing possession of the residence in implementing the protective provisions of the Act "shall not in any manner affect title or interest to any real property held by either party or both jointly[,]" cannot be seen to require a court to ignore a discrete application to consider and resolve a property dispute between the parties. An issue of that type may be decided in a separate order, even under the same docket number to the extent required by considerations of judicial economy and efficiency, as long as it has been dealt with independently.
Among the other deficiencies in the arguments he makes, defendant cannot overcome the logical force, jurisdictionally, of his own affidavit of October 14, 1997, in which he asserted, in part:
it will be necessary for me to either sell the home or, alternatively, rent out the same [because the mortgage payments are in arrears.] I would request that the Order specifically state that [plaintiff] provide access to realtors as well as any parties brought into the home by realtors so that the home be viewed and marketed.
We conclude, therefore, that the trial court had the jurisdiction to decide the property issue and that there is no basis, in the record, for departing from the determinations made and the order entered on October 28, 2003.
Accordingly, we affirm.
NOTES
[1] The record on appeal does not contain the initial complaint. We discern the commencement date of the proceeding from a recital in the earliest document in the record on appeal, an amended final restraining order entered on October 17, 1997.
[2] Plaintiff's father has since passed away.
[3] The parties' briefs on appeal do not deal with the issue whether, given the pendency of the appeal, the trial court had the jurisdiction to entertain plaintiff's motion or to enter the order requiring defendant to vacate the property. Because the parties have not raised the issue, i.e., whether or not this was simply an enforcement motion, which the trial court may entertain while an appeal is pending, see Pressler, Current N.J. Court Rules, comment 5 on R. 1:10-3, p. 175 (2005), we do not address it. See Robbiani v. Burke, 77 N.J. 383, 395, 390 A.2d 1149 (1978).