**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0214-22

LUISA RODRIGUEZ, LUIS
RODRIGUEZ, and BELKYS
RODRIGUEZ,

    Plaintiffs-Appellants,

v.

ENRIQUE RODRIGUEZ,

    Defendant-Respondent.

_____

Submitted February 14, 2024 – Decided April 15, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000105-20.

Alsaidi Chang Hamdan, LLC, attorneys for appellants (Joseph A. Chang, of counsel and on the brief; Jeffrey M. Zajac, on the brief).

Fusco & Macaluso, PC, attorney for respondent (Yafresie Feliz, on the brief).

PER CURIAM

Plaintiffs Luisa Rodriguez, Luis Rodriguez, and Belkys Rodriguez (collectively referred to as plaintiffs) appeal from a September 8, 2022 Chancery Division order denying plaintiffs' request for partition of a two-family residential home (the Property) owned in title by their brother, defendant Enrique Rodriguez, in which their stepfather, Ceferino De La Cruz, resides. We affirm substantially for the reasons set forth by Judge Bruno Mongiardo in his oral decision issued at the conclusion of a bench trial.

I.

We derive the following salient facts on this intra-familial dispute from the trial record and Judge Mongiardo's September 8, 2022 oral decision.

On June 30, 2020, plaintiffs filed a complaint against Enrique[1] seeking partition of the Property in accordance with their respective interests or, in the alternative, compelling the sale of the Property and the division of the proceeds. Plaintiffs requested relief under theories of constructive trust and joint venture to effectuate the alleged express intention of their mother, Jova Dolores De La Cruz, for all of her children to hold title to the Property upon her death.

---

[1] Since the parties share a surname, we refer to them individually by their first names for clarity of the record and ease of the reader. By doing so, we intend no disrespect.

A-0214-22

On May 9 and 10, 2022, a bench trial was held at which Luisa, Belkys, Enrique and Ceferino testified. Luisa and Belkys testified that in February 2013, Jairo De La Cruz, the parties' stepbrother, purchased the Property for their mother, Jova, in "name only" using funds from Jova and Ceferino for the down payment. Ceferino testified that he and Jova moved to the Property while Jairo owned it.

In 2019, Jairo wanted to sell the Property in order to purchase another piece of real property. Luisa testified that Jova asked family members if they would buy the Property.

She explained that Jova and Ceferino were unable to buy the Property because they could not obtain a mortgage due to their lack of income and poor credit. Belkys also testified that Jova feared losing her Social Security, Medicaid, and Medicare benefits as well as health insurance if she owned real property in the United States.

Belkys testified that "the family" decided Enrique would purchase the Property from Jairo and, thereafter, Jova and Ceferino asked Enrique to obtain a mortgage because he had established credit and owned other properties. On February 28, 2019, Enrique purchased the Property from Jairo for $225,000. It is undisputed that only Enrique's name appears on the deed.

A-0214-22

Plaintiffs and Enrique each testified differently as to the source of funds used for the down payment to purchase the Property. Luisa and Belkys testified that Jova and Ceferino sold their home in Santiago, Dominican Republic (the Santiago Property) to assist in the purchase of the Property from Jairo. Belkys testified she originally owned the Santiago Property but gave the house to her mother and Ceferino as a gift. Both Enrique and Ceferino denied that the Santiago Property was gifted to Jova and Ceferino. Ceferino testified regarding a 1993 deed, admitted into evidence, showing title to the Santiago Property only in his name. Enrique testified he sold the Santiago Property for Ceferino and Jova through execution of a power of attorney.

According to Luisa and Belkys, Jova alone received $85,000 from the sale of the Santiago Property, and $53,000 from the proceeds was given to Enrique to put towards the mortgage on the Property to reduce the monthly mortgage payment. The additional $32,000 was placed into Enrique's Wells Fargo account. Enrique testified that Ceferino provided him with $40,000 for the down payment on the Property, which was from the sale of the Santiago Property purchased by Ceferino and Jova.

Plaintiffs do not dispute that none of them contributed any money towards the purchase of the Property and that Enrique is the sole obligor on the

4

$168,000 mortgage. Plaintiffs do not assert they made any mortgage payments.

Luisa testified that Jova was the landlord of the Property, rented out a unit within the home to tenants, collected rent, paid all the bills for the premises and made repairs whenever they were needed. She testified the rent money paid for the mortgage. Belkys testified that Jova "was too old" to have a bank account.

Both Jova and Ceferino lived at the Property until Jova's death on April 29, 2020.[2] Ceferino continues to reside at the Property. He testified that Enrique still owns the Property and Ceferino lives there rent free.

Luisa and Belkys testified it was Jova's intention upon her death that the ownership of the Property be divided among Ceferino and her five children, Luisa, Luis, Belkys, Enrique and Luce Maria,[3] with fifty percent of her share going to Ceferino, who would have the right to live in the Property. Belkys testified that Jova did not execute a will transferring the Property to the children at her death because she did not own the Property in title. Luisa testified to a document, not in evidence, signed by Jova which stated that upon

---

[2] Jova died intestate.

[3] Luce Maria was not a party to the action.

A-0214-22

her death the $85,000 from the sale of the Santiago Property was to be divided among her five children.

Belkys asserted Jova wanted Enrique to sign a quitclaim deed in favor of all the children, but he did not. Enrique testified his sibling, Luce Maria, asked him to sign a quitclaim deed in favor of all the siblings but that was before he purchased the Property.

Enrique said he would be willing to pay his siblings $20,000 as advance inheritance but no agreement was reached. Luisa testified Enrique sent her a message on WhatsApp two weeks before their mother passed away stating "he was willing to transfer the [Property] . . . because [Enrique] [did not] want [plaintiffs] to call [him a] thief anymore." The certified English translation of the WhatsApp message, originally written in Spanish, was moved into evidence. Enrique testified he only asked Luisa to consider putting Belkys' daughter, Beliza,[4] on a quitclaim deed because Luisa said she was going to have somebody kill him if he did not do what she wanted with the Property.

After trial was concluded, Judge Mongiardo entered a September 8, 2022 order dismissing plaintiffs' complaint with prejudice and denying plaintiffs' request for partition. In his oral decision, Judge Mongiardo considered the

---

[4] The record is inconsistent as to the spelling of Beliza's name.

A-0214-22

credible testimony in the record as well as the following documents in evidence: 1) a deed for the Property; 2) Enrique's January 6, 2021 certification; 3) Ceferino's January 5, 2021 and February 8, 2022 certifications; 4) a power of attorney, both in English and Spanish; 5) two WhatsApp audio messages;[5] and 6) a deed for the Santiago Property.

After considering the evidence in the record, the court found the following facts were undisputed: The parties are siblings, whose mother, Jova, died intestate on April 29, 2020. Jova and Ceferino first moved into the Property in 1993 when Jairo was the owner. At the time of her death, Jova resided on the first floor of the Property with Ceferino, her asserted husband, and her fifth child, Luce Maria. The sibling plaintiffs are not the biological children of Ceferino, who has seven children from a prior marriage. Although there is a question concerning the legality of their marriage, Jova treated Ceferino as her husband up until her death.

Judge Mongiardo made further findings of fact based on what he found to be credible evidence in the record: Ceferino continues to live on the first floor of the Property, and it was Jova's express wish and desire to allow

---

[5] The audio recordings were not provided to us. We requested counsel provide certified transcripts for our review.

A-0214-22

Ceferino to live in the house until his death if she were to predecease him. Enrique purchased the Property from Jairo for $225,000 and a February 28, 2019 deed setting forth his ownership was recorded. Jairo is Ceferino's son, Jova's stepson and plaintiffs' stepbrother. Plaintiffs did not contribute any money towards the purchase of the Property. Some of the funds for the purchase of the Property came from the sale of the Santiago Property which was titled solely to Ceferino. The net proceeds of the Santiago Property were $80,000.

Additionally, Ceferino, the sole title holder, gave $40,000 to Enrique to use as a down payment to purchase the Property from Jairo. The remaining $40,000 was placed in a savings account in Enrique's name. Enrique is the sole obligor of the $168,000 mortgage balance.

Next, Judge Mongiardo found there was no credible evidence in the record to establish Jova was the de jure owner, de facto owner or mortgagee of the Property since her name was not on the title, deed or mortgage when Enrique purchased the property and there is no documentary evidence that she paid any of the taxes or contributed to the cost of maintaining the Property. There also was no documentary evidence to establish Jova collected rent payments nor were there any tenants who were called as witnesses to support

the contention she was the landlord. Judge Mongiardo concluded the down payment for the purchase of the Property came from the sale of the Santiago Property, which was in Ceferino's name only, and Ceferino was free to gift money to anyone he wanted. Judge Mongiardo found that "[m]erely residing at the premise[s] with the consent and permission of . . . defendant does not equate or rise to the level of possession."

Judge Mongiardo found plaintiffs' proofs did not establish they are entitled to a constructive trust in the Property. First, Judge Mongiardo determined there was no evidence Enrique "committed a fraud or made a mistake" and, instead, "[i]t appears that his stepfather, with the implicit approval of his mother, facilitated the transaction where [Enrique] obtained title to the subject property." The judge found it convincing that a portion of the proceeds of the sale of the Santiago Property was put into a Wells Fargo account in Enrique's name. Judge Mongiardo rejected Belkys' testimony that this was done because their mother, at age seventy-nine, "was simply too old" to have a bank account in her name since it "makes no sense and is not believable."

The judge found plaintiffs did not establish any wrongdoing by Enrique. Moreover, the judge stated, that, even if he accepted plaintiffs' allegation that

9

wrongdoing occurred when Enrique refused to provide a quitclaim deed to the property with the names of all five siblings on it, this would contradict Jova's clear, express desire for Ceferino to live in the Property until his death.

The judge found the proofs of Jova's wishes regarding her children's interest in the Property were "at best confusing, weak, and equivocal." Judge Mongiardo concluded the power of attorney executed in the Dominican Republic evidenced Jova's concern about Ceferino's seven children in addition to her own, which contradicted the claim it was Jova's desire the Property be jointly owned only by her five children to the exclusion of Ceferino and his biological children. Similarly, the judge found Luisa's testimony that Jova's last wish for one-half of the Property to belong to Ceferino was inconsistent with plaintiffs' theory that judgment should be entered awarding them all equal interest in the Property.

Based upon the credible trial testimony, the judge found that Luisa, who was very close to her mother, never discussed with Enrique putting her or her sisters' names on the deed and Luisa never discussed the prospect of death with Jova. The judge found the WhatsApp audio recordings equivocal at best and not determinative of Jova's wishes.

10

The judge also rejected plaintiffs' theory that the real estate transactions in 2013 and 2019, regarding the Property, were joint ventures between Jova and Jairo, and later Jova and Enrique. Although Judge Mongiardo recognized a joint venture can be established by inference through the conduct of the parties under Mitchell v. Oksienik, 380 N.J. Super. 119, 129 (App. Div. 2005), he found plaintiffs did not proffer any documentary evidence of: 1) "contribution by the parties of money, property, effort, knowledge, skill, or other asset to a common undertaking"; and 2) the "right of mutual control or management of the enterprise" quoting Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962).

The judge concluded he was presented with only the unsubstantiated claims of two plaintiffs, who lacked credibility due to the inconsistencies as to the history and ownership of the Santiago Property. Instead, Ceferino's testimony that he purchased the Santiago Property was supported by the 1993 deed. Furthermore, Judge Mongiardo found that although plaintiffs testified Jova was involved with both properties, they provided no rational explanation as to why Jova did not have her name directly involved with either transaction.

Judge Mongiardo concluded that "[s]omething else was going on. That something else has not been presented to the [c]ourt. There appears to be a

11

lack of transparency on the part of . . . plaintiffs." Ultimately, the judge found the only joint venture was an agreement to surreptitiously keep public entities providing benefits to Jova, as well as the mortgage company, uninformed.

Judge Mongiardo found the discretionary remedy of partition would not be equitable here, where plaintiffs were focused on their own interests and totally ignored the interest of their sister, Luce Maria, an individual with special needs who lives at the Property, and contradicted Jova's expressed desire for Ceferino to live in the house until his death. Furthermore, the judge found that there was nothing in the record to suggest Jova did not have the capacity to effectuate the plan she supposedly had for her children. In ruling in favor of Enrique and denying plaintiffs' request for partition, the judge stated:

> Looking at this case from its broadest perspective, these parties now come before the [c]ourt seeking judicial intervention to unravel a web of possible secrecy and possible deceit and deception which they helped weave. They hope that the [c]ourt will extract from this web a clear picture of what plaintiffs claim was their mother's intention and wish of how she wanted to treat and care for her children.
>
> There's nothing in the record to suggest that their mother, Jova . . . , did not have the capacity to set in . . . motion and put in place the plan she supposedly had for her children. There was nothing that prevented or impeded her [from] do[ing] so.

12

The assertions of the testifying plaintiffs are bald, bare claims and impressions without any documentary or corroborative support. Their testimony in many respects is self-serving, self-centered, confusing, and non[]sensical.

This is at its core an unfortunate family dispute where it seems all involved had little regard for normal legal protocols and conduct.

. . . [P]laintiffs have not proven their case. They have not proven their entitlement to the . . . exercise of the [c]ourt's equity powers. To order a petition as requested would do an injustice to a number of persons, including the following non-parties[:] Luce Maria . . . [Ceferino] . . . and the seven natural biological children of [Ceferino].

The judge found plaintiffs failed to meet the burden of establishing by a preponderance of the evidence they are entitled to partition of the Property. Judgment was entered for defendant. This appeal followed.

II.

On appeal, plaintiffs argue Judge Mongiardo erred in finding they did not support their causes of action and their trial proofs established a right to partition under New Jersey law. We disagree.

Partition is an equitable remedy allowing multiple parties to obtain an order dividing property or compelling its sale. Newman v. Chase, 70 N.J. 254, 261 (1976); see also Greco v. Greco, 160 N.J. Super. 98, 101-02 (App. Div. 1978)

13                                                    A-0214-22

(citing Newman, 70 N.J. at 263).  Whether and how partition is ordered is within the discretion of the court since "the statutory language is permissive rather than mandatory."  Greco, 160 N.J. Super. at 101-03 (quoting Newman, 70 N.J. at 263). The "[g]eneral rules governing burden[s] of proof apply in [a] partition action[]." Swartz v. Becker, 246 N.J. Super. 406, 411 (App. Div. 1991).

Where partition is established, Rule 4:63-1 allows real estate to be divided if it would not result in great prejudice, otherwise the court may direct a sale of the property.  The sale of property in lieu of partition is statutorily authorized under N.J.S.A. 2A:56-2, which sets forth that when the partition of real property would be impracticable or impossible, courts "may . . . direct the sale thereof if it appears that a partition thereof cannot be made without great prejudice to the owners, or persons interested therein."

We apply a deferential standard to our review of the factual findings of the trial judge.  Balducci v. Cige, 240 N.J. 574, 594-95 (2020).  "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms

14

Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  We give deference to findings of fact particularly because the judge has an "opportunity to hear and see the witnesses who testified on the stand."  Balducci, 240 N.J. at 595.

We review questions of law de novo.  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019).  "[A] trial court's interpretation of the law and the legal consequences flowing from established facts are not entitled to any special deference."  Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We first address plaintiffs' argument they are entitled to a constructive trust affording them equal ownership interests in the Property.  "[A] constructive trust is the formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[,] equity converts him into a trustee."  Flanigan v. Munson, 175 N.J. 597, 608 (2003) (quoting Beatty v. Guggenheim Expl. Co., 122 N.E. 378, 380 (N.Y. 1919)).

Plaintiffs must satisfy a two-prong test to establish the imposition of a constructive trust is appropriate.  Ibid.  First, the proofs must establish one of

the parties "committed 'a wrongful act.'" Ibid. (quoting D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968)). "The act, however, need not be fraudulent to result in a constructive trust; a mere mistake is sufficient for these purposes." Ibid.

The second prong requires proof the wrongful or mistaken act resulted in a property transfer that unjustly enriched a party. Ibid. See Stewart v. Harris Structural Steel Co., Inc, 198 N.J. Super. 255, 266 (App. Div. 1984); Carr v. Carr, 120 N.J. 336, 352 (1990). "[U]njust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another." Goldsmith v. Camden Cnty. Surrogate's Off., 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting Assocs. Com. Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986)). A plaintiff seeking the imposition of a constructive trust must show proof defendant has received a benefit and retention of that benefit would be unjust. Ibid.

Plaintiffs have not met their burden of establishing Enrique obtained title to the Property through fraud or mistake and have not demonstrated he would be unjustly enriched by remaining the sole owner of the property. It is undisputed Enrique, alone, is and has been financially responsible for the carrying costs of the Property. The proofs at trial established that Enrique had express approval from Ceferino, and implicit approval from Jova, to title the

16

Property in his name, as corroborated by the proceeds of the sale of the Santiago Property being placed in Enrique's bank account. Thus, the judge's finding Enrique did not own the Property by way of a wrongful act or mistake is supported by evidence in the record.

The evidence adduced at trial supports the judge's conclusion that Enrique would not be unjustly enriched by retaining title to the Property. Plaintiffs do not dispute they have not contributed any money towards the purchase of the property, or paid the carrying costs including mortgage and taxes. We decline to disturb the judge's factual finding that Enrique alone bore the responsibility for paying the carrying costs of the property and is the obligor under the mortgage.

We reject the suggestion that granting partition of the Property based upon constructive trust would be consistent with Jova's intentions. Judge Mongiardo found plaintiffs' evidence of Jova's wishes as to title to the Property to be weak, at best. Belkys testified Jova wanted Enrique to sign a quitclaim deed to include his other four siblings on the title to the property. However, Belkys also testified at another point in the trial that it was Jova's intention to divide the Property between Ceferino and her five children. The judge also found that the proofs regarding Jova's intentions were further muddled by a

power of attorney executed in the Dominican Republic in which she expressed concern for Ceferino's seven biological children. Based upon the credible trial testimony, Judge Mongiardo could only conclude that Jova expressly wanted Ceferino to live on the Property after her death, which is contrary to plaintiffs' request for the Property to be partitioned and sold. We see no error in the trial court's conclusion.

## III.

Next, we address plaintiffs' argument the judge erred in failing to find there was a joint venture sufficient to compel a partition and sale of the Property. A joint venture is one in which two or more people engage in an undertaking together for the purpose of making money or generating a profit. Wittner, 72 N.J. Super. at 444. The joint venture is not created by law, but rather expressly or impliedly assumed by the parties. Id. at 443.

Parties may enter into formal agreements for a joint enterprise to exist, but that is not necessary, because a "joint enterprise can be . . . inferred from the conduct of the parties." Mitchell, 380 N.J. Super. at 129. Under prevailing law, the following factors are relevant considerations in determining whether a joint venture is established:

(A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;

(B) A joint property interest in the subject matter of the venture;

(C) A right of mutual control or management of the enterprise;

(D) Expectation of profit, or the presence of "adventure," as it is sometimes called;

(E) A right to participate in the profits;

(F) Most usually, limitation of the objective to a single undertaking or ad hoc enterprise.

[Wittner, 72 N.J. Super at 444 (italicization omitted) (quoting 2 Williston on Contracts § 318A, at pp. 563-65 (3d. ed. 1959)).]

Plaintiffs assert they established the elements of a joint venture between Jova and Enrique through "(1) a contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking; and (2) a right of mutual control or management in the enterprise."  We are unconvinced the trial record supports plaintiffs' contentions.

The trial proofs did not establish Jova ever held a joint ownership interest in the Property either in title or through equity and, thus, she had no right of mutual control or management.  The judge found "there [was] no

credible evidence in the record to establish that Jova . . . was either the de jure or de facto owner of the subject property." Our review of the proofs in the record reveals no basis to disturb Judge Mongiardo's factual findings and legal conclusion that Jova never had a joint equitable or legal interest in the property.

Further, no documentary evidence was presented to confirm Jova acted as a landlord for the Property or contributed monetarily to its carrying costs in furtherance of a joint venture. We decline to disturb Judge Mongiardo's rejection of the explanation as to why Jova did not have a bank account. Conversely, Enrique credibly established he alone paid the mortgage, taxes and maintenance on the Property.

Finally, plaintiffs did not establish by the preponderance of the credible evidence that Jova and Enrique formed a joint venture based upon contribution of funds comprising the down payment for the Property. The parties do not dispute that the sale proceeds from the Santiago Property were used for the down payment for purchase of the Property. Based on the proofs in the trial record, we decline to disturb Judge Mongiardo's finding that Ceferino's funds alone comprised the down payment for the Property. The judge found

Ceferino's testimony that he purchased the Santiago Property in 1993 to be credible and corroborated by the deed.

We see no error in the judge's conclusion that plaintiffs' testimony regarding the ownership and sale of the Santiago Property, used in part for the down payment for the Property, was inconsistent. Luisa testified the Santiago Property originally belonged to Ceferino and was then transferred to Belkys. Belkys contradicted this testimony and asserted she purchased the home in the Dominican Republic in 1997. At one point Belkys testified she transferred the Santiago Property to Ceferino and her mother in 2010, but later testified she transferred the Santiago Property only to Ceferino.

Since plaintiffs did not establish Jova's ownership of the Santiago Property, Judge Mongiardo's conclusion that plaintiffs failed to establish Jova's funds were used for the down payment is supported by the credible evidence in the record. The failure to establish ownership of the funds comprising the down payment, coupled with the lack of credible proofs as to any other contribution towards the Property, was fatal to plaintiffs' joint venture theory.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21