**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1234-16T4

SUZANNE SOLBERG NAGLE,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

THOR SOLBERG, JR., and
LORRAINE P. SOLBERG,

      Defendants-Appellants/
      Cross-Respondents,

and

SOLBERG AVIATION
COMPANY and SOLBERG
AVIATION CO., INC.,

      Defendants.

_____

      Argued May 28, 2019 – Decided June 13, 2019

      Before Judges Sabatino, Haas and Mitterhoff.

      On appeal from Superior Court of New Jersey, Chancery Division, Hunterdon County, Docket No. C-014022-11.

Lawrence S. Berger argued the cause for appellants/cross-respondents (Berger & Bornstein, LLC, and Sobel Han & Cannon, LLP, attorneys; Lawrence S. Berger and Gregory J. Cannon, on the briefs).

William D. Wallach argued the cause for respondent/cross-appellant (McCarter & English, LLP, attorneys; William D. Wallach, on the briefs).

PER CURIAM

In this business dispute among the three siblings who have long owned and operated Solberg-Hunterdon Airport ("SHA"),[1] defendants Thor Solberg, Jr.,[2] and Lorraine P. Solberg ("Thor" and "Lorraine") appeal from a final judgment awarding plaintiff Suzanne Solberg Nagle ("Suzanne") various forms of relief, including attorney fees, for minority shareholder oppression and related claims. The judgment followed a multi-day bench trial intermittently spanning two months and several post-trial hearings.

Thor's estate and Lorraine argue on appeal, among other things, that the

---

[1] The failed condemnation of that airport was the subject of a related appeal, Twp. of Readington v. Solberg Aviation Co., No. A-3964-15 (App. Div. Mar. 1, 2019), decided earlier this term and this court's prior opinion remanding the case for trial. See Twp. of Readington v. Solberg Aviation Co., 409 N.J. Super. 282 (App. Div. 2009).

[2] Thor passed away in December 2017.

attorney fee award was incommensurate with the extent of the relief Suzanne obtained, and improperly based in part on services relating to partnership claims, that the court misinterpreted the parties' partnership documents, and that the court abused its discretion in granting damages for Thor's long-term occupancy of a residence on the airport property. Suzanne cross-appeals, contending the damages awarded to her for Thor's use of the residence and the remedies granted to her in other respects were insufficient.

For the reasons that follow, we reject the appeal and cross-appeal and affirm all aspects of the final judgment.

I.

As noted in our introduction, Thor (now deceased), Lorraine, and Suzanne are siblings. Their father, Thor Solberg, Sr., was a renowned pilot who established SHA in 1939 and acquired over the next several decades a considerable amount of land surrounding the airport facilities. See generally Twp. of Readington, 409 N.J. Super. at 289, 291.

After Thor Sr. and his wife passed away, the parties formed Solberg Aviation Company, a New Jersey partnership, in April 1977, for the purpose of owning and managing the property comprising SHA and the surrounding land. The partnership's members were Thor, Lorraine, Suzanne, and each of their

parents' estates, with each sibling ultimately having an equal one-third interest.

Among other things, the partnership agreement specified that each partner would "participate in the management" of the business and be empowered to "determine all questions relating to [its] conduct," and required that its books and records be maintained at its principal offices and that all partners have access to them at all times.  An additional partnership document in July 1977 authorized the siblings to jointly execute certain documents, including mortgages, on behalf of the partnership.  The agreement was initially set to run through March 2006, and was duly extended once by Thor and Lorraine through June 30, 2008, but apparently was not renewed thereafter.

The siblings also established Solberg Aviation Co., Inc., a New Jersey corporation, which operates SHA and leases the land on which the airport sits from the partnership.  The siblings held equal shares.  Each served as an officer: Thor as president, Suzanne as corporate secretary, and Lorraine as assistant secretary.

In practice, Thor and Lorraine shared responsibility for operating the airport's flight school, maintaining aircraft, leasing hangar space, and selling jet fuel, and Thor was additionally responsible for arranging financing and filing the entities' tax returns.  Suzanne, meanwhile, managed the airport's

4

maintenance shop and handled the bulk of the accounting.

In addition to sharing the profits from the family business, the parties each earned a small salary from the corporation and enjoyed several perks. Those perks included Suzanne's use of hangar space at the airport for her personal aircraft.

Moreover, Thor took advantage of the long-term use of a residence on the airport property on Pulaski Road, where he had lived since 1971. He occupied the residence without reimbursement to the partnership for either its rental value or, with the exception of a single payment, for property taxes, but did maintain and improve the property. Suzanne asked Thor to pay rent over the years and also brought the issue up with Lorraine, but without success. She failed to introduce any competent expert evidence at trial to demonstrate the property's fair market rental value, but records showed that $150,297.20 had been incurred in property taxes during the period of Thor's occupancy that fell within the statute of limitations. For his part, Thor initially failed to produce any records at trial to substantiate any of the improvements he had made to the property, until an accounting was conducted after the trial.

According to Suzanne, there was little acrimony among the partners early on in their business activities. Friction arose in more recent years, leading to

what the trial court ultimately found was considerable mismanagement of the family business's affairs, from which Suzanne had been left out in many respects. For instance, Thor had habitually filed the entities' tax returns late since at least 2003, incurring substantial penalties. Billing for the airport and flight school also ran substantially late, in part because Thor asked to review bills on certain accounts before they were sent to customers and then failed to do so sometimes for years. However, the court found that all the partners had been inattentive in their responsibilities for billing.

With respect to paying expenses, Suzanne complained that she had no access to records for certain of the corporate bank accounts, at least one of which Thor had recently established and directed that the statements be sent to his own residence. Suzanne testified that she began to withhold making large deposits until she was about to write checks, so that she could be sure the necessary funds to cover them would be in the accounts, but Thor claimed her habit of doing so inspired him to open the new account in the first place.

Suzanne did have access at least to the general ledger, which Thor maintained. But the ledger entries were not up to date, in part because the parties had failed to keep up with billing, and in part because Thor often deliberately delayed making adjustments to ensure a proper allocation between the

A-1234-16T4

partnership and corporation, given the family business's limited cash flow.

Most notably, the general ledger from 2001 through 2012 nominally showed that Thor owed more than $600,000 to the partnership, an amount he claimed at trial was no longer accurate but that he nonetheless had failed to take any steps to correct. The court found Thor's testimony to be lacking in credibility in several respects, and found his testimony on cross-examination to be "very evasive" on this subject in particular.

Among the specific transactions from which Suzanne was excluded was a $450,000 mortgage loan from November 2006, executed by Thor and Lorraine without Suzanne's knowledge and not recorded until February 2008. Suzanne disputed as improperly diverted only about $53,000 of those funds, which, according to Thor, the partnership spent on public relations and other work related to defending the partnership in its longstanding litigation with Readington Township over the municipality's attempted condemnation of the airport property. But Thor failed to provide invoices for or otherwise adequately justify some of those expenses, and the court ultimately found $16,000 of them improper on that basis.

Later, when the property comprising Thor's residence became the subject of a tax lien foreclosure in 2012, Thor failed to notify Suzanne and initially

declined to redeem the lien or even answer the foreclosure complaint, though he acknowledged on cross-examination that the partnership's bank accounts had sufficient funds for him to do so. He ultimately did redeem the lien a year later, but at considerable extra cost in interest and legal fees to the partnership.

## II.

In May 2011, Suzanne filed a complaint in the Chancery Division against Thor and Lorraine and, nominally, the siblings' business entities, setting forth claims for minority shareholder oppression, breach of fiduciary duty, and breach of the parties' partnership agreement. Thor and Lorraine filed an answer and counterclaim against Suzanne.

Judge Edward M. Coleman held a bench trial on the matter from February 4 to March 13, 2014, and issued an oral decision on May 5, 2014, finding in Suzanne's favor on her claims and granting, among other relief, an award of attorney fees and the appointment of a special fiscal agent to sort out and monitor the family business's financial affairs. The judge issued a judgment to that effect on July 18, 2014, and an amended judgment on September 29, 2014.

The court found from the evidence that Thor and Lorraine had oppressed Suzanne as a minority shareholder by withholding information from her, leaving her out of corporate decision-making, and generally mismanaging the business

to her detriment. The court found defendants had breached the partnership agreement and their fiduciary duties to Suzanne on largely the same grounds and, in the former respect, especially by executing mortgages without her participation. Thor, moreover, had long inappropriately used the residence on the property for his own benefit without any compensation.

As a consequence, the court ordered in the initial judgment that defendants return to the partnership $150,297.20 for property taxes incurred on the residence during Thor's occupancy, $47,000 for redemption of the tax lien on the same property, and $16,000 for the funds improperly diverted from the $450,000 mortgage, and, as mentioned, ordered that an accounting be performed, with the expectation that Thor could turn out to owe as much as the $600,000 shown on the general ledger. Further, the court awarded Suzanne $329,018.13 in attorney fees, the full amount she had sought. The court also prohibited Thor from competing with the partnership through his separate company, Thor Solberg Aviation, LLC ("TSA"), except to the extent of his service as a pilot.

Judge Coleman issued an order appointing John H. Coyle as special fiscal agent on May 19, 2014, and authorized the retention of Thomas S. Wagner of Wagner & Associates, LLC, to conduct a forensic accounting regarding certain

issues that remained in dispute. Wagner issued a report on June 10, 2015. Judge Coleman conducted an evidentiary hearing regarding the report's findings and recommendations over several days in December 2015.

In the course of the subsequent court-mandated accounting, however, Thor finally produced records substantiating expenditures he had made to improve the residence, as well as other transactions shedding light on the business's finances and relevant to the amount he nominally owed in the general ledger. As more fully discussed infra, pursuant to the court-appointed accountant's recommendations, the court ultimately amended the judgment to grant Thor a $200,000 credit for the improvements he had made to the residence and, with respect to his loan balance, reflecting that, rather than owing money to the partnership, he was actually owed $190,437 by the partnership. Nonetheless, the court declined to modify Suzanne's attorney fee award, noting that fundamentally she had still prevailed on her claims, earned the appointment of the special fiscal agent, and thereby rectified the family business's affairs for her own and her siblings' benefit.

The judge issued an oral decision on January 4, 2016, adopting the findings in the report. The judge thereafter denied Thor and Lorraine any modification of the attorney fee award in light of those findings on February 19,

2016, and issued a second amended final judgment on October 11, 2016.

Thor and Lorraine appealed on various grounds, and Suzanne has cross-appealed. Thor has since passed away, although his estate has not been formally substituted in his stead as a party to this appeal.

### III.

In considering the parties' competing arguments in the appeal and cross-appeals, we are guided by well-settled principles. We must give considerable deference to the findings of the judge who presided over this nonjury trial and the post-trial proceedings, so long as they have credible support in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Such deference is especially warranted where those findings depend on the court's credibility determinations made after observing the witnesses testify. Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 367-68 (1999). We also must recognize the trial judge's "feel for the case" developed in presiding over the lengthy proceedings. Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 291-92 (2001).

Because this dispute was litigated in the Chancery Division, we also must be mindful of the broad equitable authority vested in the Chancery judge in doing justice, and in fashioning remedies suited to the particular circumstances

11

of the case.  See, e.g., <u>Marioni v. Roxy Garments Delivery Co.</u>, 417 N.J. Super. 269, 275 (App. Div. 2010); <u>Mitchell v. Oksienik</u>, 380 N.J. Super. 119, 130-31 (App. Div. 2005)

We review de novo, however, the trial judge's rulings on pure questions of law.  <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

A.

In their appeal, Thor's estate and Lorraine argue that: (1) the trial court's award of attorney's fees to Suzanne was unjustified and excessive; (2) the court erred in its disposition of the issues concerning Thor's occupancy of the residence on the airport property; (3) the court misinterpreted the partnership agreement and related documents and applied that mistaken interpretation to the entire family business, including the corporation; (4) the court incorrectly found Lorraine and Thor were estopped from bringing any claim against Suzanne for her use of a company hangar for her personal airplane; and (5) the court should have required Suzanne to reimburse the partnership for the costs of professional services expended on preliminary land use approvals.[3]

We have considered each of these points in light of the record and the

---

[3] We have reorganized and renumbered the points on appeal.

applicable standards of review. Having done so, we affirm the trial court's challenged decisions, substantially for the reasons articulated by Judge Coleman in his successive rulings. The judge clearly exhibited a "feel for the case" and, on the whole, ruled in a fair and equitable manner in addressing the litany of issues the parties called upon him to decide. We add a few amplifying issue-specific comments.

1.

We are unpersuaded the counsel fee award to Suzanne must be set aside. Thor's estate and Lorraine principally argue that the fees were awarded prematurely, before the post-trial accounting later revealed that Thor was entitled to a $200,000 credit for capital improvements he made to the airport property. They also contend the fee award must be confined to legal services expended on Suzanne's statutory oppressed shareholder claim and not services relating to her claims for breach of the partnership agreement or fiduciary duties. Neither of these arguments compel reversal or a remand to recalculate the fee award.

In general, appellate courts defer considerably to the sound discretion of trial judges in their disposition of counsel fee applications. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001). Here, a fee award to Suzanne was

legally authorized under the oppressed shareholder statute, N.J.S.A. 14A:12-7(10), which allows the trial court "in its discretion" to award counsel fees to a minority shareholder if one or more defendants have "acted arbitrarily, vexatiously, or otherwise not in good faith."

Judge Coleman's findings of oppression and what he termed as "gross mismanagement" on the part of Thor and Lorraine have ample support in the record. The post-trial accounting that produced a financial adjustment in Thor's favor does not eliminate the trial court's sound basis for awarding fees to Suzanne.

When he declined to reduce the fee award following the accounting, Judge Coleman observed that Thor's then-probable debt was "only one factor" that had informed his prior decision to award fees. As the judge further noted, through plaintiff's efforts in litigating the case, she had sparked the appointment of the special fiscal agent and "corrected the [business's] management deficiencies on [a] going-forward basis." Suzanne's proven claims of oppression and mismanagement were compensable wrongs, in and of themselves. A fee-shifting award may be justified even if the amount of damages recovered by the plaintiff are not proportional. Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 366 (1995).

The fee award did not have to be diminished to take into account Suzanne's counsel's efforts on the companion breach of partnership claim. We recognize the partnership agreement, as contrasted with the oppressed shareholder statute, contains no fee-shifting provision. However, given the close nexus between the siblings' partnership and the corporation, the entities' common ownership and operation, and the overlapping factual background underlying Suzanne's claims of wrongdoing, the legal work expended by Suzanne's counsel on the corporate claim and the partnership claim was surely intertwined.

We discern no reason to remand the fee award for recalculation, even if this issue had been raised by defendants below. Moreover, we have doubts as to whether it would be feasible or fruitful to attempt to segregate professional time spent on "shareholder issues" from "partnership issues."

The balance of the arguments presented for reducing the fee award – including the claim that plaintiff's law firm's senior attorney (who billed at a reduced hourly rate) should have delegated tasks to a colleague with a lower billing rate – lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

## 2.

Thor's estate and Lorraine argue that Suzanne should have been estopped from making any claims arising from Thor's long-term use of the residence,

contending she acquiesced to that use. They further contend that Suzanne's claims relating to the residence are barred as a matter of law, because she did not present expert proof of the fair market value of Thor's occupancy. We disagree.

Suzanne testified that she asked Thor to pay rent for his use of the residence but he rebuffed her. Suzanne also testified she brought the subject up with Lorraine, but to no avail. Hence, Suzanne was effectively outvoted, and therefore it was understandable that she ultimately pursued the claim in the litigation.

In addition, although Suzanne did not present expert testimony concerning the market value of Thor's use of the premises, the unpaid local property taxes incurred during Thor's occupancy represented an equitable measure of relief to Suzanne.

In any event, the post-accounting offset for Thor's proven capital expenditures on the residence cancelled out Suzanne's monetary recovery on her affirmative claim. There is no unjust result that requires appellate relief to Thor's estate and Lorraine on this issue. R. 2:10-2.

### 3.

We are likewise unconvinced that the trial court misapplied the siblings'

partnership agreement and the subsequent related agreement.[4] The later instrument expressly required the siblings to act "jointly" on the entity's behalf in connection with the execution of mortgages, deeds, contracts, and other documents.

Thor's estate and Lorraine argue that this provision pertained only to the signing of formal transactional documents, and not to underlying decision-making regarding such transactions. However, Suzanne testified that the parties had contemplated that they would all need to agree "jointly" on such transactions. Whether or not her testimony on that subject is dispositive of the parties' intent, the record indisputably shows that the $450,000 mortgage loan which precipitated Suzanne's lawsuit was not executed with her signature. In fact, the evidence shows the funds were borrowed without Suzanne's knowledge, much less her consent.

The trial court did not err in concluding that defendants had breached their partnership and co-shareholder obligations to Suzanne concerning, at the very least, the loan transaction.

---

[4] That agreement is labeled an "Acknowledgment" but is referred to by the trial court as an "Addendum."

4.

Little needs to be said about the trial court's finding that Lorraine and Thor waived any claim to rent from Suzanne for her use of hangar space for her personal aircraft. Thor acknowledged on cross-examination at trial that Suzanne's use of the hangar was a perk equally available to all of the siblings. The trial judge reasonably relied upon that concession in deeming the hangar space counterclaim against Suzanne waived. Given that concession, it was not manifestly inequitable or illogical for the court to treat Suzanne's use of the hangar space differently from Thor's exclusive use of the sole residence located on the property.

5.

We find no merit in appellants' contention that the trial court was obligated to require Suzanne to reimburse them for her acquisition of the preliminary subdivision approvals. The court-approved fiscal agent and forensic accountant both recommended that these approvals should run with the portion of the airport land that Suzanne had acquired through foreclosure. Judge Coleman reasonably adopted those recommendations. The soundness of the judge's decision is not undermined by appellants' argument that the site plan work was only preliminary in nature and not "final." The court's wide discretion over the equities in the

case was not misapplied in its disposition of this issue.

## B.

In her own points on cross-appeal, Suzanne argues that the trial court: (1) unfairly barred her from presenting lay opinion testimony on the fair market value of Thor's use of the residence, and inequitably applied recoupment principles in granting Thor the credit for his capital improvements to the premises; (2) did not adequately enjoin Thor from competing with the family businesses; and (3) should have required a further accounting of funds allegedly due to the family business from a third party named Dan Devine.

Applying the same standard of appellate review we have already recited and applied to the contentions of Thor's estate and Lorraine, we are similarly unpersuaded by Suzanne's arguments for altering the final judgment.

## 1.

The trial judge did not misapply his wide discretion over evidentiary rulings when he precluded Suzanne from presenting lay opinion testimony about the market value of Thor's occupancy of the residence. Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008) (recognizing the well-settled discretion afforded to civil trial judges over evidentiary matters). Under Evidence Rule 701, lay opinion testimony is only admissible in the trial court's discretion if it is "rationally based

on the perception of the witness" and "will assist" the trier of fact. N.J.R.E. 701. As Judge Coleman noted, Suzanne admitted she had not been inside of the residence in years and thus lacked an appropriate factual basis upon which to form a competent lay opinion of its current rental value. In any event, as we have already noted, the judge did equitably take into account the property taxes accumulated on the premises, which Thor had failed to pay.

Nor did the trial judge misapply principles of recoupment in granting Thor credit for his capital improvements. The judge reasonably accepted the forensic accountant's opinion that Thor's expenditures improved an asset the partnership continued to hold. The fact that those expenditures partially occurred before Thor began occupying the residence in 2001 is not dispositive. A counterclaim for recoupment is not time-barred so long as the main action seeking affirmative monetary recovery is timely. Beneficial Fin. Co. of Atl. City v. Swaggerty, 86 N.J. 602, 609 (1981).

Moreover, the timing of Thor's expenditures largely, if not precisely, coincided with the underlying loans that also were in dispute. We also reject Suzanne's contention that the proofs of capital improvements Thor presented to the forensic accountant were made too late. Suzanne had fair notice Thor was seeking an offset, and the court could reasonably conclude it would be

inequitable to deny him one once he substantiated the improvements.

2.

Despite Suzanne's argument to the contrary, the trial judge did not misapply his equitable powers by allegedly failing to enjoin Thor sufficiently from competing with the family businesses. The amended final judgment issued after the trial broadly enjoined defendants "from engaging in any activity or conduct that directly competes with the [parties' corporation or partnership], including but not limited to . . . the provision of services to third parties by [Thor's company TSA,] except for pilot services." Notably, Wagner, the court-appointed forensic accountant, conducted a review of three years of TSA's financial records, and found no transactions attributable to services undertaken in direct competition with the family business.

Suzanne contends that the court should have broadened the terms of the injunction because of testimony Thor provided in the post-trial proceedings acknowledging that SHA could "theoretically" hire pilots to provide to third parties at least some pilot services Thor provided through TSA. Judge Coleman reasonably concluded that this testimony did not require further anti-competitive relief.

Nor are we persuaded the judge was obligated to draw an adverse

21

inference against Thor because of his alleged non-compliance with subpoenas issued by Suzanne.  See Torres v. Pabon, 225 N.J. 167, 181 (2016) (outlining the court's discretionary authority to apply an adverse inference, noting the inference is "not invariably available.") (quoting State v. Hill, 199 N.J. 545, 561 (2009)).  Moreover, the issue of prospective injunctive relief against Thor individually is mooted by his death during the pendency of the appeal.

3.

Lastly, we reject Suzanne's cross-appeal demanding a remand to delve further into funds allegedly owed to the family businesses by Dan Devine for fuel, hangar, and maintenance fees for two of his planes housed at the airport. The judge credited Devine's testimony explaining the pertinent business arrangements, and concluded Devine did not owe the Solberg family businesses any funds, particularly given the "substantial benefit" the Solbergs derived from the relationship with Devine.  There is substantial credible evidence in the record to sustain the trial court on this subject.  Rova Farms, 65 N.J. at 483-84.

C.

In sum, neither the appellants nor the cross-appellant have demonstrated that the trial court's rulings produced an unjust result.  R. 2:10-2.  On the whole, the trial judge commendably dealt with these intra-family business issues

22

thoughtfully and fairly. There is no reason to disturb the final judgment.

To the extent we have not commented on any other points raised by the parties, they lack sufficient merit to warrant written discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1234-16T4