**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3505-23

P.L.,[1]

    Plaintiff-Appellant,

v.

L.R.,

    Defendant-Respondent.

_____

Submitted February 24, 2026 – Decided June 9, 2026

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0335-19.

Einhorn Barbarito Frost Botwinick Nunn & Musmanno PC, attorneys for appellant (Bonnie C. Frost, of counsel and on the briefs; Patricia L. Veres, on the briefs).

Lomurro Munson LLC, attorneys for respondent (Bettina E. Munson and Christina Vassiliou Harvey, of counsel and on the brief; Sean M. Wirth, on the brief).

---

[1] We use initials to protect the privacy of the parties. See R. 1:38-3(d)(10).

PER CURIAM

Following years of pretrial litigation and months of non-consecutive trial days, plaintiff P.L. appeals from a series of Family Part orders denying her palimony claim against defendant L.R., partitioning the parties' assets, awarding defendant Mallamo[2] credits, and requiring plaintiff to pay counsel fees. Plaintiff challenges the trial judge's findings and further asserts the judge was biased against her. We reject plaintiff's contentions and affirm all orders under review, with the exception of the distribution of funds held in one joint brokerage account. We therefore affirm in part, and reverse in part, and remand solely to correct the singular error.

I.

The tortured procedural history and facts adduced during the protracted trial are meticulously detailed in the trial judge's seventy-nine-page written decision accompanying a May 7, 2024 trial order,[3] cogent written decision accompanying a May 28, 2024 attorneys' fee order, and convincing statements of reasons accompanying numerous case management and other pre-, mid- and

---

[2] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

[3] On May 29, 2024, the judge issued an amended order and statement of reasons correcting clerical errors.

A-3505-23

post-trial orders. We therefore need not repeat the events and testimony in the same level of particularity. Nonetheless, our summary of the circumstances giving rise to the issues raised on appeal requires some elaboration.

A. The Parties, their Property, and their Claims

The parties met in 1987, while employed at a Long Island hospital. Defendant was a fellow in the pediatric cardiology program; plaintiff, having attained a master's degree in physiology, worked in the physiology laboratory. The parties began a romantic relationship in the late 1980s and cohabitated for nearly three decades, but never married or entered a civil union.

In the early 1990s, defendant moved to New Jersey for a job opportunity and plaintiff relocated to this state so the parties could reside together. Defendant paid for plaintiff to obtain a law degree during the 1990s, but she stopped practicing after a few years. Around 2000, defendant established a medical practice in Wall where plaintiff worked as office manager. In 2009, plaintiff adopted two boys from Russia.[4]

---

[4] Defendant testified at trial, "Russia doesn't permit [couples in] homosexual relationships to adopt children."

A-3505-23

In October 2017, the parties' relationship ended when defendant left their shared residence and moved into another jointly-owned home. Thereafter, the children, who had attained the age of majority, resided with defendant.

In January 2018, defendant obtained a temporary restraining order (TRO) against plaintiff. The following month, the parties agreed to the issuance of a civil consent order dissolving the TRO, imposing civil restraints, and maintaining the status quo regarding their jointly-held properties and assets.

Apparently, the spirit of the compromise reflected in the February 2018 consent order was short lived. As the trial judge noted in her May 7, 2024 decision, in March 2018, the parties obtained cross-TROs against each other and, around the same time, one of the sons obtained a TRO against plaintiff. Eventually, all TROs were voluntarily dismissed. As the judge further noted, in August 2018, defendant filed a complaint for partition of the parties' property in the Chancery Division.[5]

In September 2018, plaintiff filed a fourteen-count complaint against defendant seeking palimony and equitable relief, and asserting Tevis claims.[6] In

---

[5] Defendant's partition complaint was not provided on appeal.

[6] See Tevis v. Tevis, 79 N.J. 422, 433-34 (1979) (recognizing that the single controversy doctrine requires marital tort claims to be alleged in conjunction with the divorce action).

A-3505-23

particular, plaintiff sought support and distribution of the parties' assets (count one), and separately alleged or sought: unjust enrichment (count two); quantum meruit (count three); implied contract (count four); constructive trust (count five); resulting trust (count six); transmutation (count seven); legal and equitable estoppel (count eight); specific performance (count nine); joint venture (count ten); fraud and deceit (count eleven); physical assault (count twelve); intentional infliction of emotional distress (count thirteen); and negligent infliction of emotional distress (count fourteen).

Defendant filed an answer and asserted counterclaims, including partition of the parties' real property. Thereafter, defendant filed an amended answer and asserted additional counterclaims. Defendant alleged or sought: partition of the parties' properties (count one); damages or waste (count two); dissolution of the Allaire Management Group, LLC (Allaire LLC) (count three); reimbursement of expenses (count four); extreme cruelty (count five); intentional infliction of emotional distress (count six); general negligence (count seven); battered woman's syndrome (count eight); assault and battery (count nine); and emotional abuse (count ten).

At issue were six real properties acquired during the parties' nearly three-decade relationship:

A-3505-23

1. Squankum-Allenwood Road, Wall (S-A Road Property)
   - In 1992, the parties purchased the property as joint tenants and resided together at the premises until 2005.
   - The residence remained vacant until defendant returned in 2017, when the parties ended their relationship.
   - Plaintiff's parents loaned the parties $14,044 toward the $30,000 down payment for the property, which was promptly repaid within two years; defendant paid the remaining down payment amount.

2. Atlantic Avenue, Allenwood (Atlantic Avenue Office Property)
   - In the late 1990s, defendant funded the purchase of the property, titled solely in plaintiff's name, to serve as plaintiff's law office; instead, the property was leased and sold in 2016.

3. Allaire Road, Wall (Commercial Property)
   - In 2001, defendant purchased property in her own name to serve as her medical office, demolished an existing building on site, rebuilt the property around 2005, and later transferred it to the Allaire LLC, an entity for which both parties were managing members, around 2009.
   - The parties obtained a home equity line of credit (HELOC) on the S-A Road Property to fund construction of the Commercial Property. As of the time of trial, defendant used the property as her medical office.

6

4.  Atlantic Avenue, Allenwood (Atlantic Avenue Residential Property)[7]
    - In 2005, the parties purchased the property as joint tenants with the right of survivorship.
    - The parties intended that plaintiff's parents would reside at the premises.
    - Plaintiff paid approximately $21,000 toward the downpayment of $80,000, and defendant paid the balance; the parties jointly mortgaged the remainder.

5.  Jordan Court, Howell (Jordan Court Property)
    - In 2005, the parties jointly purchased the property and, until the present litigation, the home was their primary residence.
    - In 2009, the parties transferred the property to plaintiff's name alone in connection with the children's adoption, but retitled it jointly thereafter.
    - Defendant paid nearly all expenses for the residence, except from February 2009 to February 2010, when plaintiff paid some expenses while the property was titled solely in her name.
    - After the parties' relationship ended, plaintiff lived at the premises until the property was sold in 2022.

6.  Marbella Club Puerto Rico (Puerto Rico Vacation Property)

---

[7]  The record reveals the Atlantic Avenue Residential Property was located at a separate address from the Atlantic Avenue Commercial Property.  We omit the specific addresses to protect the parties' privacy.

A-3505-23

- In 2016, the parties jointly purchased a residence in Puerto Rico for use as a vacation home.
- Plaintiff applied $139,963 in proceeds from the sale of the Atlantic Avenue Office Property toward the down payment and defendant contributed $10,000.
- The parties jointly mortgaged the Puerto Rico Vacation Property, but defendant, alone, paid the mortgage and bills.

During their relationship, the parties also held several financial accounts, individually and jointly. Pertinent to this appeal, the parties jointly held a TD Ameritrade brokerage account. At the outset of the litigation, the account was valued at $211,027.

## B. Motion Practice

Significant motion practice ensued before, during, and after trial. In September 2019, defendant moved for an order deeming plaintiff responsible for certain real property and other expenses. In her motion, defendant also sought appointment of a guardian ad litem (GAL) for plaintiff. Defendant alleged plaintiff suffered from "severe mental illness" and was "totally incapable of addressing the issues in this litigation." To support her application, defendant claimed, during mediation, plaintiff "simply rants and raves regarding her estranged relationship" with the children.

8

Plaintiff opposed the motion and cross-moved for certain relief. Relevant here, in her certification opposing defendant's motion, plaintiff asserted: "While I am suffering from some depression, [post-traumatic stress disorder (PTSD),] and related distress, I am fully capable of managing my own affairs and nothing [defendant] has presented indicates anything to the contrary." Plaintiff contended defendant's GAL application was yet "another example of emotional abuse." Plaintiff further alleged the application was "frivolous and unsubstantiated," and reserved her right to seek counsel fees.

While the judge's decision was pending, in October 2019, the parties agreed each would take a pendente lite advance of $100,000 from their joint TD Ameritrade brokerage account to pay their counsel fees. Plaintiff immediately withdrew her $100,000 share; defendant withdrew $30,000 from her share, leaving $70,000 and the remaining $11,027 from the $211,027 starting balance. During her trial testimony, plaintiff acknowledged, earlier in 2019, she also withdrew $92,775 from the HELOC on the S-A Road Property for her counsel fees.

On January 13, 2020, the trial judge issued an order, amended on January 17, 2020, requiring defendant to pay all expenses for the Jordan Court, S-A Road, and the Puerto Rico Vacation properties. Plaintiff was ordered to pay all

9

expenses for the Atlantic Avenue Residential Property. The judge clarified, to maintain the status quo, the February 2018 consent order required defendant to continue to pay plaintiff a gross salary of $6,000 per month as support. With plaintiff's consent, the judge also ordered plaintiff to make all monthly payments for the funds she borrowed from the HELOC. The judge further directed the parties to list the Jordan Court Property for sale and permitted plaintiff to relocate to the Atlantic Avenue Residential Property; we glean from the record, plaintiff did not comply. The judge denied, without comment, defendant's request for appointment of a GAL.

In February 2021, defendant sought to refinance the S-A Road Property, but plaintiff refused to cooperate, necessitating three case management conferences and orders directing plaintiff to comply.

Notwithstanding the January 2020 order, plaintiff failed to pay the expenses for the Atlantic Avenue Residential Property. At some point, a major leak developed when a pipe burst at the premises. Plaintiff opposed mold remediation and barred a remediation company from entering the home. In May 2021, the judge issued an order providing the court would select a new contractor for remediation upon receipt of estimates because the parties could not agree.

A-3505-23

On June 30, 2021, following an emergent case management conference, the judge issued an order regarding the closing for the HELOC on the S-A Road Property. In the order, the judge noted several prior orders were issued regarding the HELOC's refinancing. The judge directed the parties to appear for the closing the following day and granted defendant power of attorney to execute the closing documents on plaintiff's behalf if she refused to attend the closing or sign the documents. In that event, the judge indicated defendant could file an application for sanctions.

According to the judge's ensuing trial decision, after the June 30, 2021 conference, "[p]laintiff was very agitated" and, that same day, "concerned for [p]laintiff's mental health," her attorney filed an emergent application seeking appointment of a GAL.[8] On July 1, 2021, another judge denied without prejudice plaintiff's emergent application for failure to satisfy the seminal standard for a stay of the proceedings under Crowe v. De Gioia, 90 N.J. 126 (1982).[9]

---

[8] Plaintiff did not include her emergent application in her appellate appendix.

[9] In Crowe, 90 N.J. at 132-33, our Supreme Court held a party seeking a stay must demonstrate: (1) relief is necessary to prevent irreparable harm; (2) there is a reasonable probability of success on the merits that rest on settled law; and (3) the balance of the relative hardships favor that party.

A-3505-23

In October 2021, the trial judge issued an order on the parties' cross-motions, directing defendant to assume management of the Atlantic Avenue Residential Property, including maintenance payments and overseeing the contractors' work. Following additional disagreements, the judge barred plaintiff from entering the home or contacting the contractors and ordered defendant to change the locks. The judge directed the sale of the Atlantic Avenue Residential Property upon completion of the repairs. The judge also granted defendant's application to reduce her support obligation to $4,200 per month.

Following a December 15, 2021 case management conference, the judge issued an order that same day directing defendant to pay the $1,710 per month mortgage on the Atlantic Avenue Residential Property, in addition to the expenses previously ordered, and reduced her support payment to plaintiff by these amounts.

On January 11, 2022, the judge issued an order directing the parties to list the Jordan Court and Puerto Rico Vacation properties for sale. Despite prior orders, the sales had not occurred because plaintiff refused to sign listing agreements. Less than one month later, on February 4, 2022, because plaintiff continued to refuse signing listing agreements, the judge issued yet another

order specifying procedures for the listing and sale of the Jordan Court and Puerto Rico properties.

A May 10, 2022 case management order reflects the status of the listing agreements for the Jordan Court and Atlantic Avenue Residential properties. For example, regarding the Jordan Court Property, the judge noted, "during a scheduled trial date on May 9, 2022," plaintiff was ordered to sign the contract for the property that day, or defendant "w[ould be] granted power of attorney to sign the document on [p]laintiff's behalf." The judge further stated plaintiff had signed the contract but, among other modifications, "included the words 'under duress' by her signature." The judge deemed plaintiff's modifications "further gamesmanship and stall tactics." Plaintiff having failed to sign the contract the previous day, in the May 10 order, the judge granted defendant power of attorney.

After the contract of sale was signed for the Jordan Court Property, plaintiff refused to permit home inspections. As the closing date approached, the judge granted defendant's show cause application, directing plaintiff to cooperate with the sale and vacate the premises before the July 2022 closing.

Meanwhile, although repairs to the Atlantic Avenue Residential Property were completed in January 2022, plaintiff refused to sign the listing agreement

13

for that property. Finding plaintiff endeavored "to sabotage the sale," the judge ordered plaintiff to sign the listing agreement. Ultimately, the property was listed for sale in June 2022.

However, during trial on August 26, 2022, the judge issued another order finding plaintiff delayed the sale of the Atlantic Avenue Residential Property, directing the parties to accept the pending offer, and granting defendant power of attorney to sign the contract on plaintiff's behalf. The property sold in October 2022 for $450,000.

Also, during trial on October 3, 2022, the judge issued an order directing plaintiff to cooperate with an appraisal of the Puerto Rico Property to facilitate its sale. Despite several orders directing the sale, plaintiff continued to occupy the Puerto Rico Property during and after trial.

On June 2, 2023, after the trial concluded, the judge issued an order on cross-motions barring plaintiff from the Puerto Rico Property and ordering her to vacate the premises. The judge also ordered defendant to manage the sale of the property and, in view of plaintiff's "obstructionist behavior," directed plaintiff to pay defendant's fees and costs associated with the motion.

Plaintiff refused to vacate the Puerto Rico Property. On July 31, 2023, the judge granted, in part, defendant's show cause application and issued a bench

14

warrant for plaintiff's arrest for failing to appear in court. The judge further directed law enforcement to forcibly remove plaintiff from the Puerto Rico Property, and granted defendant an award of fees and costs associated with plaintiff's removal. On defendant's motion, the judge sanctioned plaintiff $500 for each day she remained in the Puerto Rico property, which ultimately totaled $140,500.

### C. The Trial

Following five years of motion practice, trial commenced on March 8, 2022, and continued for more than twenty days through December 19, 2022. By the time of trial, plaintiff had hired and fired at least seven attorneys, resulting in delays and adjournments; by the end of trial plaintiff had hired nine attorneys. Several attorneys sought to be relieved as counsel, citing a breakdown in their relationship with plaintiff.

Plaintiff attended trial with the assistance of a service dog. The judge permitted regular breaks allowing plaintiff to walk the dog. Because plaintiff indicated she had pending surgeries, the judge also permitted plaintiff to take breaks for medical reasons.

During the third day of her seven-day testimony, plaintiff sought to postpone the trial, asserting she suffered from ongoing thyroid issues, which

15

caused "issues with recall" and "cognition." During the court's voir dire, plaintiff acknowledged these issues were present since 2012, and she had been able to testify without incident. The judge denied plaintiff's application, noting plaintiff failed to produce any medical documentation supporting her claim.

As her first witness, plaintiff presented the testimony of defendant. Plaintiff also testified on her own behalf and called the parties' estate planner. Defendant testified on her own behalf and presented the testimony of her accountant. The parties also introduced into evidence various documents. During trial, the parties withdrew their Tevis claims.

Following closing arguments on December 19, 2022, the trial judge reserved decision. On May 7, 2024, the judge issued her comprehensive trial decision and memorializing order. In her decision, the judge squarely addressed the issues raised in view of the governing legal principles and the voluminous record amassed before, during, and after trial.[10]

In the May 28, 2024 order, the judge awarded defendant $400,000 in counsel fees. In her thorough written opinion accompanying the order, the judge

---

[10] Plaintiff's appellate appendix includes seven volumes, containing more than 1,000 pages of documents. The record also includes twenty-five transcripts.

found "these fees were incurred almost entirely as a result of [p]laintiff's unreasonable conduct."

On appeal, plaintiff raises five points, contending the trial judge: (1) was biased against plaintiff; (2) erroneously denied plaintiff's palimony claim; (3) improperly awarded a <u>Mallamo</u> credit; (4) unjustly enriched defendant; and (5) abused her discretion by ordering counsel fees.

II.

We address plaintiff's claims of error seriatim, guided by well-established principles concerning our limited scope of review of Family Part orders. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). Because of its special expertise in family matters, we owe substantial deference to the family court's findings of fact. <u>Id.</u> at 413. We ordinarily defer to those findings "when the evidence is largely testimonial and involves questions of credibility." <u>Id.</u> at 412 (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)). We do so "because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" <u>C.R. v. M.T.</u>, 248 N.J. 428, 440 (2021) (quoting <u>State v. Elders</u>, 192 N.J. 224, 244 (2007)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." <u>Cesare</u>, 154 N.J. at 411-

17

12; see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We, of course, owe no special deference to the trial court's legal conclusions, which we review de novo. C.R., 248 N.J. at 440.

A.

Subsumed within plaintiff's first point are three subpoints asserting the trial judge's "bias permeated [her] handling and view of the matter" as reflected in her decisions. Plaintiff contends the judge: (1) failed to appoint a GAL to represent plaintiff's interests; (2) included post-trial motion decision in her final decision; and (3) overlooked defendant's "false and evasive testimony" when assessing plaintiff's credibility. Little need be said regarding plaintiff's first two subpoints.

1. Appointment of a GAL

Contending the judge ignored "red flags," plaintiff summarily argues the judge failed to appoint a GAL. Emphasizing both parties requested a GAL, plaintiff asserts "appointment of a [GAL] would have alleviated the stress on [her]." Claiming the judge overlooked evidence she was suffering from medical and mental health issues, plaintiff asserts a GAL would have "improved communication" thereby avoiding "multiple changes in counsel." Plaintiff cites no authority to support her contention.

18

Relevant here, pursuant to Rule 4:26-2(b)(2), the "court may appoint a [GAL] for" an "alleged or adjudicated incapacitated person" either on a party's motion, R. 4:26-2(b)(3), or its own motion, R. 4:26-2(b)(4). "The decision to appoint a [GAL] is reposed in the discretion of the trial judge, and rightly so because the decision is informed by the experience the judge gains as the judge sifts through a daily docket of contested matters." J.B. v. W.B., 215 N.J. 305, 333 (2013).

Here, in September 2019, plaintiff vehemently opposed defendant's GAL application, certifying she was "fully capable of managing [her] own affairs." Although her attorney filed an emergent application, apparently seeking appointment of a GAL nearly two years later on July 1, 2021, the record is devoid of any evidence substantiating her request.

Instead, the record demonstrates plaintiff was actively involved in the trial in a reasonably participatory manner, lived independently, performed both paid and volunteer work, and did not display obvious signs of need for a GAL. She alleged various ailments throughout this matter, but it does not appear any of those conditions interfered with her ability to testify. Moreover, the trial judge accommodated plaintiff's need for breaks.

On this record, we discern no error in the judge's decisions denying the appointment of a GAL. We defer, as we must, to the judge's observations of plaintiff throughout the protracted litigation of this matter. See C.R., 248 N.J. at 440. Indeed, the judge found plaintiff was "obstinate, difficult, and obstreperous throughout th[e] litigation," but the judge never found plaintiff was incapable of participating in the proceedings. The record supports the judge's findings.

## 2. Post-Trial Motion Decision

Plaintiff argues the trial judge erroneously included in her final decision a discussion of proceedings arising between the December 19, 2022 final trial date and the May 7, 2024 trial order and decision. Without citing any supporting authority, plaintiff alleges she was prejudiced by the judge's inclusion of her ongoing occupancy of the Puerto Rico Property and the resultant $500 daily fine. Notably, however, plaintiff does not challenge the imposition of the aggregate $140,500 fine.

Relevant here, Rule 1:7-4(a) mandates the court "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury" and "on every motion decided by a written order that is appealable as of right." The disposition

20

of the Puerto Rico Property was crucial to the resolution of this matter and warranted complete discussion in the judge's decision.

### 3. Credibility Findings

In two full pages of her trial decision, the judge detailed her credibility findings concerning all four witnesses. First addressing plaintiff's testimony, the judge found she was "wholly lacking in credibility." The judge elaborated:

> She was obstinate, difficult, and obstreperous throughout this litigation. She deliberately defied [c]ourt [o]rders on countless occasions. She was sanctioned. Plaintiff disrupted [c]ourt proceedings, acted out, and . . . displayed a lack of respect towards the [c]ourt. Plaintiff's difficult personality caused her to go through nine (9) separate attorneys during the course of the litigation, and she even engaged in altercations with her own counsel on the record.

Citing multiple examples in the record, the judge further found "[p]laintiff lied multiple times while under oath and in sworn certifications."

By contrast, the judge credited defendant's testimony, finding it was "reasonable and consistent with the documentary evidence." The judge further noted defendant "was knowledgeable and direct in her answers"; "did not embellish"; "was candid when she did not remember specific details about events that occurred many years in the past"; and "was appropriately emotional." The judge noted defendant's "body language and mannerisms on the stand

21

reflect[ed] that of a woman who ha[d] been physically and mentally abused by her partner for years."

Based on our review of the record, we conclude the trial judge's credibility findings are supported by the record and need not be disturbed. The record reflects plaintiff repeatedly disobeyed court orders. As noted, plaintiff refused to sign listing agreements for the real properties, resulting in extensive delays throughout the litigation. She also failed to pay expenses for Atlantic Avenue Residential Property notwithstanding a court order directing her to do so. Accordingly, defendant was forced to make those payments. Plaintiff continued to occupy the Puerto Rico Property precluding its sale, ultimately requiring a court order directing her to vacate. Nonetheless, as the trial judge noted in her decision, as of that time, plaintiff remained "squatted" at the Puerto Rico Property. We discern no error in the judge's credibility findings, which reflect her observations of the parties throughout the lengthy trial.

## B. Palimony

To support her argument that the trial judge erroneously denied her palimony claim, plaintiff contends defendant made implied promises of support, and plaintiff provided consideration for those promises throughout the parties' relationship. We are unpersuaded.

A-3505-23

In her trial decision, the judge thoroughly addressed the history of palimony law in this state, recognizing oral palimony agreements were enforceable under the common law, Kozlowski v. Kozlowski, 80 N.J. 378 (1979), but the Legislature amended the statute of frauds, N.J.S.A. 25:1-5(h), requiring written palimony agreements executed after January 18, 2010. Noting the absence of a written palimony agreement, the judge recited the three elements necessary for establishment of a palimony claim prior to 2010: (1) a marital-type relationship; (2) an express or implied promise of lifetime support made during or to induce that relationship; and (3) consideration given by the recipient of the promise. Moynihan v. Lynch, 250 N.J. 60, 79-80 (2022); Maeker v. Ross, 219 N.J. 565, 576 (2014).

In her trial decision, the judge found a marital-type relationship existed between the parties as they cohabitated for almost thirty years. The judge recognized during that time frame, the parties raised children together, worked and vacationed together, and jointly owned assets. The judge also acknowledged the parties exchanged rings as a sign of their commitment.

However, the judge found the evidence did not demonstrate defendant promised to support plaintiff for life. The judge rejected plaintiff's testimony

that defendant orally promised to support her and found the exchange of rings was not tantamount to a promise to support.

Instead, the judge determined defendant provided plaintiff "with the tools she would need to support herself in the future, including funding a career and multiple retirement and investment accounts." Citing plaintiff's "two master's degrees, a law degree," and her experience as a "medical office manager," the judge found plaintiff "[wa]s more than capable of getting a job and supporting herself." Noting estate documents were not admitted in evidence, the judge found "the testimony concerning them was inconsistent and unreliable." Nonetheless, the judge found plaintiff conflated defendant's "promise of <u>lifetime support</u> with a gift of property or assets <u>after death</u>."

The trial judge further found, even if defendant promised to support plaintiff for life, the record did not support plaintiff's contention that plaintiff provided consideration for any such promise. In particular, the judge noted the evidence did not demonstrate plaintiff "gave up" her legal career to work for defendant; rather plaintiff was unhappy in her legal career. Nor did plaintiff relinquish her legal career to stay home and raise the children or perform homemaking duties.

Recognizing defendant was "eligible to retire in less than two years," the judge found defendant set up herself and plaintiff "with the means to support themselves after retirement." The judge also found plaintiff not only was capable of working, but also, in view of her age, "eligible to withdraw money from her various retirement accounts without penalty" and receive social security income.

Plaintiff's reprised contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm the palimony order substantially for the reasons articulated by the trial judge in her well-reasoned decision.

## C. Mallamo credits

To support her argument that Mallamo credits were erroneously awarded, plaintiff argues the trial judge incorrectly considered the protracted length of the litigation and plaintiff's failure to comply with court orders. She also challenges the judge's findings that she is financially self-sufficient.

In her trial decision, the judge thoughtfully addressed defendant's contentions in view of this court's decision in Mallamo, 280 N.J. Super. at 12, recognizing the purpose of pendente lite support is to maintain the parties' status quo prior to inception of the litigation and can be modified on final judgment.

A-3505-23

In particular, defendant sought credits for: support; health insurance coverage; expenses paid toward the parties' real property; $70,000 remaining in the parties' joint TD Ameritrade account, plus passive income; and the mediation fee.

The judge thoughtfully considered each contention raised by defendant and awarded her a total of $156,880 in Mallamo credits. In assessing each claim, the judge weighed the equities and, in many instances, reduced defendant's award accordingly. As one notable example, the judge reduced defendant's Mallamo credit for support because defendant voluntarily paid $6,000 per month from February 2018 to January 2020 under the February 2018 consent order.

To the extent plaintiff challenges the judge's findings that plaintiff prolonged the litigation and was self-sufficient, both findings are supported by the record. There is ample evidence plaintiff delayed the matter including by, for example, continuously refusing to sign listing agreements for the parties' jointly-held real property. Similarly, at the time of trial, plaintiff was self-sufficient, evidenced by her advanced degrees, work experience, and volunteer work. Nonetheless, in reducing defendant's Mallamo credits, the judge applied equitable principles. We discern no abuse of discretion here. See Slutsky v. Slutsky, 451 N.J. Super. 332, 368 (App. Div. 2017) (recognizing changes in pendente lite orders "rest with the trial judges' discretion").

26

D.  Partition of Assets

Plaintiff contends the trial judge erroneously distributed the following assets:  the four jointly-held real properties, S-A Road, Jordan Court, Atlantic Avenue Residential, and Puerto Rico properties; the jointly-held TD Ameritrade brokerage account; and the Commercial Property titled solely in defendant's name.

In her May 7, 2024 trial decision, the judge recognized our state's equitable distribution statute does not apply to unmarried parties.  See N.J.S.A. 2A:34-23.1; Carr v. Carr, 120 N.J. 336, 342 (1990).  The judge further observed when property is jointly owned or acquired by the parties and their joint enterprise comes to an end, they may seek partition of that property.  See Mitchell v. Oksienik, 380 N.J. Super. 119, 127-28 (App. Div. 2005).  The judge thoroughly addressed the applicable legal principles regarding partition.  Suffice it to say, "[A]s a general proposition, on a sale of commonly owned property, an owner who has paid less than his [or her] pro-rata share of operating and maintenance expenses of the property must account to co-owner who has contributed more than his [or her] pro-rata share."  Esteves v. Esteves, 341 N.J. Super. 197, 201-02 (App. Div. 2001).

Addressing the evidence adduced at trial, the judge found:

Defendant exclusively paid the down payments, the mortgage payments, and the vast majority of the expenses on all of these properties throughout the parties' relationship. Despite this, [d]efendant does not seek a credit for the value of these contributions, although under applicable law she would be entitled to do so. Rather, [d]efendant seeks only a credit equal to 50% of the expenses she paid on these properties since the inception of this litigation in 2018. This is a testament to the inherent reasonableness of [d]efendant's position with respect to the division of these properties.

[(Footnote omitted).]

The judge then detailed her findings as to each property, noting the parties only disputed whether the Commercial Property was subject to partition. We address each property in the order challenged by plaintiff on appeal.

## 1. The Commercial Property

Plaintiff initially argues the trial judge erroneously found the Commercial Property was not a joint enterprise subject to partition. We disagree.

In her trial decision, the judge found the Commercial Property was "owned exclusively by defendant" even though the property was titled in the Allaire LLC's name, because: the company was not a viable entity; defendant paid all bills for the property; and the income associated with the building was reported on defendant's individual tax returns. The judge further found plaintiff's role in the construction process was limited to her paid employment

position as office manager. Noting the Commercial Property was not a joint venture, the judge found no basis for partition. The judge therefore awarded defendant the Commercial Property "free and clear."

In Mitchell, 380 N.J. Super. at 130, we held a trial court may decide how to apportion proceeds from real property, purchased as a joint enterprise, but held in only one party's name. Notably, however, in Mitchell, the court awarded a share to the party who was not a title owner because "the parties had always intended ownership of the home to be a joint enterprise, irrespective of how title was held." Ibid.

Here, as a threshold matter, plaintiff did not introduce an appraisal for the Commercial Property and, as such, the judge found it impossible to accurately value plaintiff's interest. In any event, the property was purchased solely in defendant's name for use as her medical practice. Moreover, in her trial testimony, plaintiff acknowledged she made no contributions toward the purchase price or the eventual formation of the Allaire LLC. Defendant included the income and expenses for the building on her individual income taxes; plaintiff did not do so. Unlike the parties in Mitchell, the record is devoid of any evidence suggesting the parties intended the Commercial Property to be a joint enterprise.

## 2. S-A Road Property

Plaintiff next contends the trial judge erroneously awarded defendant half the carrying costs for the S-A Road Property from the inception of the litigation because defendant alone occupied the home during that time. We are unpersuaded.

In her trial decision, the judge accepted the $745,000 appraised value of the S-A Road Property and awarded plaintiff a $372,500 half value. The judge reduced the half value by $89,535, representing the amount plaintiff owed on the HELOC, and $105,047.63, representing half the carrying costs from inception of the litigation – for a total of $177,917.37 owed plaintiff for her share of the S-A Road Property.

However, the judge further reduced the $177,917.37 amount by $89,078.36, representing plaintiff's obligation under the Jordan Court Property, Accordingly, the judge found plaintiff's ultimate entitlement for the S-A Road Property was $88,839.01. The judge concluded defendant would keep S-A Road "free and clear."

Citing our decision in Baker v. Drabik, 224 N.J. Super. 603, 611-12 (App. Div. 1988), plaintiff claims the judge erred. In Baker, we reversed the denial of partition of real property titled to unmarried cohabitants where the trial court

30

found the value of the party's use and occupancy exceeded her contribution. Crucially, in that case, the court erroneously determined the party had no rights in the property despite her co-ownership. Id. at 608.

By contrast, in the present matter, the trial judge properly recognized plaintiff's half-interest in the S-A Road Property, but offset that award by reasonably assessing plaintiff the carrying costs of the property. The judge's decision is consistent with our decision in Esteves as the sale involved jointly-held property. To the extent plaintiff objects to sharing the costs of defendant's occupancy of this home throughout the litigation, she fails to acknowledge she occupied the Jordan Court Property, for which defendant paid all expenses, during the litigation.

### 3. Atlantic Avenue Residential Property

Plaintiff argues the judge erroneously required her to twice pay expenses for the Atlantic Avenue Residential Property as her share was reduced by $53,094.44, but expenses were withdrawn from her support payment beginning in 2021. We reject plaintiff's contentions.

In her trial decision, the judge awarded each party half the net sale proceeds after the mortgage payoff, that is, $124,336.43 each. The judge noted plaintiff received a $30,000 advance from the net sale proceeds, leaving her with

31

a $94,336.43 balance.  But the judge found plaintiff owed defendant $53,094.44 for her share of the expenses on this property, reducing plaintiff's award to $41,241.99.  The judge thereafter applied plaintiff's credit to her obligations for other assets.

Having considered the judge's calculations in view of the evidence adduced at trial, we conclude they were reasonable.  Further, in view of the judge's finding defendant owed no pendente lite support and applied a Mallamo credit for the Atlantic Avenue Residential Property, plaintiff's claim that she "paid" the expenses for this property during litigation lacks sufficient merit to warrant further discussion.  R. 2:11-3(e)(1)(E).

### 4.  Puerto Rico Property

In her various challenges to the judge's decision on the Puerto Rico Property, plaintiff claims:  she is entitled to a larger portion of the proceeds because she contributed more to the down payment; the property was never appraised and would sell for more than the $985,000 appraisal value determined by the judge; and the $140,500 fine assessed on July 31, 2023 finds no support in the Court Rules.  Plaintiff's contentions are belied by the record and the applicable law.

A-3505-23

In her amended trial opinion, the judge found the Puerto Rico Property appraised for $985,000, with an outstanding mortgage of $268,785.90, resulting in a net equity of $716,214.10. The judge awarded plaintiff half the net equity value, that is, $358,107.05, and further reduced that amount by $106,684.87, representing half the expenses defendant paid during the litigation. Accordingly, the judge determined the value of plaintiff's interest in the Puerto Rico Property was $251,422.18. The judge ordered plaintiff to vacate the property and, upon its sale, plaintiff would be awarded $251,422.18 from the net sale proceeds. But the judge further reduced plaintiff's award by any remaining balance due for Mallamo credits, the $140,500 fine assessed on July 31, 2023, and any remaining balance on the May 28, 2024 counsel fee award.

Based on our review of the record, we conclude the judge reasonably awarded plaintiff a half-interest in this property consistent with the parties' joint ownership. Further, consistent with our decision in Esteves, the judge properly ordered plaintiff to pay half the carrying costs sought by defendant.

We reject plaintiff's contention that she was entitled to a larger portion of the proceeds because the downpayment for the Puerto Rico Property was funded by the proceeds from the sale of the Atlantic Avenue Office Property. Even though the Atlantic Avenue Office Property was titled in plaintiff's name, as the

33

judge found, defendant, alone, purchased the property. Plaintiff's claim that the Puerto Rico Property was never appraised for $985,000 is directly contradicted by defendant's trial testimony. As to the propriety of the $140,500 fine, we have long recognized a court may impose a monetary sanction under Rule 1:10-3, provided the sanction was meant to be coercive rather than merely punitive. See Ridley v. Dennison, 298 N.J. Super. 373, 381-82 (App. Div. 1997). Here, the sanction was clearly intended to coerce plaintiff to vacate the Puerto Rico Property so that it could be listed and sold and, as such, the imposition of the fine complied with the Rule.

### 5. TD Ameritrade Brokerage Account

In her merits brief, plaintiff asserts the trial judge erroneously awarded defendant the full balance of the parties' joint TD Ameritrade brokerage account. On reply, plaintiff clarifies she does not seek half the full balance, but rather "50% of $11,027, (after deduction for the agreed upon counsel fee advances of $200,000) plus gains/interest on that amount." We agree.

In her amended trial decision, the judge found, at the outset of the litigation, the account was valued at $211,027, the parties agreed to divide the funds to pay their counsel fees, plaintiff withdrew her nearly full $100,000 share, but "[d]efendant only took $30,000 and left her remaining $70,000 in the

account, where it continued to grow." The judge further found the parties did not dispute the account was valued at $155,187 at the time of trial. Defendant sought "the entire value of the account, including any growth." Citing the October 27, 2022 order, the judge noted her "attempt[] to rectify this disparity by allowing [d]efendant to receive $100,000 from the sale proceeds of [the Atlantic Avenue Residential Property] while plaintiff only received $30,000."

In her amended trial decision, the judge further recognized, in the May 7, 2024 order, the Atlantic Avenue Residential Property proceeds were split equally, and each party's share was deducted pursuant to the October 27, 2022 order. However, as the judge found, those funds were merely advances from the $124,336.43 half-interest each party received, and did not alter the existing disparity between the parties. Accordingly, the adjustment did not account for defendant's $70,000 that remained in the account.[11] In the amended opinion, the judge awarded defendant the entire $155,187 account balance, finding the amount represented "market growth" in addition to the $70,000 to which defendant was entitled.

---

[11] In her amended trial decision, the judge acknowledged to equalize the disparity at that time, $70,000 from the proceeds should have been distributed to defendant and the balance divided between the parties.

Based on our review of the record, the parties agreed they would each withdraw $100,000 from the $211,027 balance, leaving $11,027 in this jointly-titled account. In matrimonial cases, where joint assets increase in value in the course of the litigation, "[i]f the increase in value is simply due to market factors or inflation, each party should share equitably in the increment." Bednar v. Bednar, 193 N.J. Super 330, 333 (App. Div. 1984). Because the remaining funds undisputedly constituted joint property,[12] we conclude each party was entitled to half of $11,027, plus the associated growth thereon. We therefore vacate the award of the jointly-held TD Ameritrade brokerage account and remand for recalculation of the amount owed to plaintiff, reflecting half of $11,027 plus associated growth on that amount only.

## E. Counsel Fees

Plaintiff challenges the trial judge's $400,000 counsel fee award, contending the judge erroneously found plaintiff had the ability to pay, acted in bad faith, and asserted unreasonable positions throughout the litigation. Because we conclude the trial judge followed the governing law and made appropriate findings of fact, we discern no basis to disturb the fee award.

---

[12] Indeed, in her opening statement, defense counsel apparently acknowledged plaintiff was entitled to half this balance, although she misstated the balance as $21,000.

Rule 4:42-9(a)(1) expressly permits an award of counsel fees in a family action. Such fees may be awarded based on a weighing of the factors set forth in Rule 5:3-5(c):

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion," Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or a clear error in judgment, Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010). Where case law, statutes, and rules are followed, and the judge makes appropriate findings of fact, the fee award is entitled to deference. Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.7 to R. 5:3-5 (2026).

A-3505-23

One consideration in making an award of fees is whether a party acted in bad faith throughout the litigation.  Borzillo v. Borzillo, 259 N.J. Super. 286, 291-94 (Ch. Div. 1992).  Bad faith may be demonstrated by:  "misuse or abuse of process"; seeking relief "which one knows or should know that no reasonable argument could be advanced in fact or law to support"; "intentional misrepresentation of facts or law"; and acts of a losing party that are "vexatious, wanton or carried out for oppressive reasons."  Id. at 293-94.

Significantly, in her May 28, 2024 counsel fees decision, the trial judge found the six-year litigation, here, "involve[d] one of the most profound displays of bad faith by a litigant that this [c]ourt ha[d] ever seen."  The judge explained:

> Plaintiff . . . engaged in every form of delay tactic imaginable.  She has refused to comply with one [c]ourt [o]rder after another.  Despite having a law degree, she has thumbed her nose at the rule of law and displayed an utter lack of respect for the [c]ourt.  She changed attorneys 9 times – with several of them being forced to seek relief because of [p]laintiff's unreasonable conduct – resulting in constant delays from bringing this matter to conclusion.  Plaintiff lied repeatedly in sworn certifications and under oath.  At every turn, [p]laintiff unnecessarily complicated any directions given by the [c]ourt resulting in this litigation being dragged out for 6 years, to the extreme detriment and prejudice of [d]efendant . . . . Plaintiff also filed countless, baseless applications with the [c]ourt, or forced [d]efendant to file applications to compel compliance with basic [c]ourt [o]rders.  Not only did [p]laintiff's conduct delay resolution and closure of this matter for years, but

38

it resulted in [d]efendant needlessly incurring hundreds of thousands of dollars in counsel fees. If ever there was a case that justified an award of counsel fees, this is it.

The judge then listed specific instances of plaintiff's bad faith conduct. Regarding plaintiff's settlement position, the judge expressly noted she "requested that the parties submit sealed settlement submissions with their last, best and final settlement offer prior to the commencement of the trial . . . pursuant to Rule 5:3-5, which permits the sealed submission of pretrial settlement offers for purposes of assessing reasonableness when determining counsel fees."

The judge then systematically addressed the Rule 5:3-5(c) factors, and thoroughly considered RPC 1.5, finding the rates charged by defense counsel were reasonable, this matter was especially complex, and that defense counsel's focus on this matter precluded her from attending to other clients or matters. However, the judge identified some duplicative tasks and excessive billing, reducing the total award from $485,531 to $400,000.

Having considered the judge's decision in view of the applicable legal principles, we conclude her analysis and findings are fully supported by the record. The judge appropriately recognized plaintiff's bad faith conduct, the disparity in the parties' incomes, and their respective ability to pay, among other

factors. Crucially, the judge considered the extent to which plaintiff's dilatory conduct increased defendant's fees and appropriately issued an award to account for same. Contrary to plaintiff's contention, the judge did not enhance the fee based on plaintiff's final settlement offer. In evaluating the amount of the award, the court appropriately scrutinized defendant's application and reduced the amount because of certain duplicative tasks and excess charges. We discern no error here.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part. Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3505-23